■ In the Matter of LEONARD FAVALORO, Deceased. JOAN FAVALORO, Appellant; JOYCE DONAHUE et al., Respondents. [942 NYS2d 579]—

In a probate proceeding in which Joyce Donahue and Susan Powers, the limited administrators of the estate of Leonard Favaloro, petitioned pursuant to SCPA 2103 for the turnover of certain property from Joan Favaloro, the executor of the estate of Leonard Favaloro, Joan Favaloro appeals (1), as limited by her brief, from so much of an order of the Surrogate's Court, Suffolk County (Czygier, Jr., S.), dated September 29, 2009, as denied her motion for summary judgment dismissing the petition, (2) from an order of the same court dated December 17, 2010, which denied her separate motions pursuant to CPLR 4401, made at the close of the petitioners' case, for judgment as a matter of law, and pursuant to CPLR 4404 (a) to set aside a jury verdict in favor of the petitioners and against her and for judgment as a matter of law, or to set aside the jury verdict as contrary to the weight of the evidence or in the interest of justice and for a new trial, and (3) from a decree of the same court entered February 2, 2011, which, upon the orders and upon the jury verdict, is in favor of the petitioners and against her directing her to turn over the proceeds of certain brokerage accounts to the petitioners.

Ordered that the appeals from the orders are dismissed, and it is further,

Ordered that the decree is reversed, on the law, the appellant's motion pursuant to CPLR 4401 for judgment as a matter of law is granted, the order dated December 17, 2010, is modified accordingly, and the petition is dismissed; and it is further,

Ordered that one bill of costs is awarded to the appellant.

The appeals from the intermediate orders must be dismissed because the right of direct appeal therefrom terminated with the entry of the decree in the proceeding (see Matter of Aho, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the intermediate orders are brought up for review and have been considered on the appeal from the decree (see CPLR 5501 [a] [1]).

The decedent, Leonard Favaloro (hereinafter the decedent), died at the age of 79 on May 8, 2006, survived by his wife of 34 years, Joan Favaloro (hereinafter Favaloro), and his two adult daughters from a prior marriage (hereinafter together the petitioners). Pursuant to a stipulation between Favaloro and the petitioners, the decedent's will dated July 29, 2003, was admitted to probate; Favaloro obtained letters testamentary; and the petitioners obtained limited letters of administration for the purpose of examining their rights to an IRA account and a brokerage investment account that belonged to the decedent during his lifetime (hereinafter the accounts).

After conducting certain discovery, the petitioners filed a petition pursuant to SCPA 2103 for the turnover from Favaloro of the proceeds of the accounts, which the petitioners alleged were designated to pass to them upon the decedent's death. The petitioners claimed, inter alia, that, immediately prior to the decedent's death, Favaloro had changed the title and beneficiary designations on the accounts to prevent them from passing to the petitioners.

On April 23, 2009, Favaloro moved for summary judgment dismissing the petition. Favaloro asserted that she was the designated beneficiary and/or owner on the accounts since their inception, which was more than 15 years prior to the decedent's death. She further argued that she remained the beneficiary and/or owner of the accounts, despite the fact that on April 25, 2006, while in the hospital, the decedent executed change of beneficiary forms (hereinafter the change forms) in favor of the petitioners, since the decedent's broker thereafter followed the decedent's oral instructions not to implement the change forms. The petitioners opposed the motion, arguing, inter alia, that the broker's receipt of the change forms effected the decedent's request to change the accounts in their favor, and that Favaloro had, in effect, coerced the decedent into orally rescinding the change.

In an order dated September 29, 2009, the Surrogate's Court, inter alia, denied Favaloro's motion for summary judgment. The Surrogate's Court determined that Favaloro made a prima facie

showing that the decedent had effectively rescinded the change forms, but that a triable issue of fact existed as to whether the change forms were rescinded due to Favaloro's exercise of undue influence.

The matter then proceeded to a jury trial. On the petitioners' direct case, they established, inter alia, that they had spoken to the decedent frequently, and increased their visits to his home to regular weekend visits after he was diagnosed with pancreatic cancer in 2005. The decedent's doctor testified, among other things, that he admitted the decedent to the hospital on April 24, 2006, to address the decedent's persistent increasing pain. The decedent's broker also testified that during a phone conversation with the decedent on April 20 or 21, 2006, the decedent requested that the beneficiaries on the accounts be changed to the petitioners. The broker mailed the required change forms to the decedent, and received the executed paperwork on April 28, 2006.

The petitioner Joyce Donahue testified that she had personally mailed the change forms back to the decedent's broker. The broker testified that Donahue telephoned him from Florida on April 28, 2006, and instructed him to effectuate the change forms, which she expected him to receive later that day. However, the decedent telephoned the broker's office 10 minutes later that same day, and spoke with the broker's assistant. The broker further testified that, according to contemporaneous "computer notes" made of that conversation, the decedent directed that the change forms should not be effectuated, and that the decedent indicated that he was heavily sedated when he signed them, and did not remember signing anything. The broker's notes further indicated that Donahue obtained a check from the decedent in the sum of $50,000 on April 25, 2006, which the decedent tried to "stop" on May 2, 2006, after the check had already been cashed.

At the close of the petitioners' case, Favaloro moved pursuant to CPLR 4401 for judgment as a matter of law, and the trial court reserved decision on the motion.

On her rebuttal case, Favaloro relied on the testimony of a friend who, along with her spouse, had a close relationship with her and the decedent for many years. Also testifying on behalf of Favaloro was another family friend who knew the decedent well and worked for him prior to his death, and the attorney whom the decedent had retained to draft a confirmatory letter regarding his rescission of the change forms. Finally, testimony was elicited from a caseworker from Suffolk County Adult Protective Services who interviewed the decedent on May 2,

2006, in response to a complaint of elder abuse which Donahue had filed against Favaloro. The caseworker stated, inter alia, that she had prepared a report which concluded that there was no "evidence whatsoever of mistreatment or mismanagement of [the decedent's] care."

The jury returned a verdict in the petitioners' favor, in which it answered "yes" to the single question of whether "the failure to process the change of ownership and/or beneficiary designations of decedent's [ ] accounts to his daughters, Joyce Donahue and Susan Powers, [was] a product of undue influence?"

In accordance with the trial court's instructions, Favaloro submitted a written post-trial motion pursuant to CPLR 4404 (a) to set aside the jury verdict and for judgment as a matter of law, or to set aside the jury verdict as contrary to the weight of the evidence or in the interest of justice and for a new trial, and the petitioners opposed the motion. In an order dated December 17, 2010, the Surrogate's Court denied Favaloro's motion pursuant to CPLR 4401 for judgment as a matter of law and her posttrial motion. In denying the motion pursuant to CPLR 4401, the Surrogate's Court determined that the petitioners presented a case which supported their version of the events with multiple witnesses and evidence, and rejected Favaloro's contention that there was no rational process by which the jury could have found in the petitioners' favor.

On February 2, 2011, the Surrogate's Court entered a decree in favor of the petitioners and against Favaloro directing her to turn over the proceeds of the accounts to the petitioners. Favaloro appeals from the decree, and the orders dated September 29, 2009, and December 17, 2010.

A finding of undue influence requires a showing " 'that the influence exercised amounted to a moral coercion, which restrained independent action and destroyed free agency, or which, by importunity which could not be resisted, constrained the testator to do that which was against his [or her] free will and desire, but which he [or she] was unable to refuse or too weak to resist' " (*Matter of Walther*, 6 NY2d 49, 53 [1959], quoting *Children's Aid Socy. of City of N.Y. v Loveridge*, 70 NY 387, 394 [1877]; *see Matter of Engelhardt*, 88 AD3d 997, 998 [2011]; *Matter of Herman*, 289 AD2d 239, 240 [2001]). Although undue influence may be established through circumstantial evidence, such evidence must be of a substantial nature, and an inference of undue influence " 'cannot be reasonably drawn from circumstances when they are not inconsistent with a contrary inference' " (*Matter of Walther*, 6 NY2d at 54, quoting *Matter of Ruef*, 180 App Div 203, 204 [1917], *affd* 223 NY 582 [1918]; *see*

*Matter of Swain*, 125 AD2d 574, 575 [1986]). Furthermore, "[a] mere showing of opportunity and even of a motive to exercise undue influence does not justify a submission of that issue to the jury, unless there is in addition evidence that such influence was actually utilized" (*Matter of Walther*, 6 NY2d at 55; *see Matter of Fiumara*, 47 NY2d 845, 846 [1979]; *Matter of Herman*, 289 AD2d at 240).

On her motion for summary judgment, Favaloro established her prima facie entitlement to judgment as a matter of law based upon, inter alia, the affidavit of the decedent's broker, who asserted that the decedent acted of his own accord in instructing him not to implement the change forms (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). However, in opposition, the petitioners raised triable issues of fact through their affidavits which described, among other things, Favaloro's alleged attempts to control the decedent during the last weeks of his life, and asserted that the decedent was "completely coherent" when he executed the change forms (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Accordingly, the Surrogate's Court properly denied Favaloro's motion for summary judgment (*see Preshaz v Przyziazniuk*, 51 AD3d 752 [2008]; *Latopolski v Rudge*, 35 AD3d 389 [2006]).

However, the Surrogate's Court erred in denying Favaloro's motion pursuant to CPLR 4401 for judgment as a matter of law. "To succeed on a motion for judgment as a matter of law pursuant to CPLR 4401, a defendant has the burden of showing that there is no rational process by which the jury could find in favor of the plaintiff and against the moving defendant" (*Elnakib v County of Suffolk*, 90 AD3d 596, 596-597 [2011]; *see Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]; *Doland v Stephenson*, 89 AD3d 789 [2011], *lv denied* 18 NY3d 808 [2012]; *Velez v Goldenberg*, 29 AD3d 780, 781 [2006]). In determining whether a movant satisfies this burden, the court must accept the opponent's evidence as true and accord the opponent "the benefit of every reasonable inference which can reasonably be drawn from the evidence presented at trial" (*Elnakib v County of Suffolk*, 90 AD3d at 597; *see Doland v Stephenson*, 89 AD3d at 789; *Matter of O'Malley*, 87 AD3d 1012 [2011]; *Velez v Goldenberg*, 29 AD3d at 781).

Here, the petitioners' proffered evidence was insufficient to establish that the decedent instructed his broker not to implement the change forms as a result of undue influence by Favaloro. The petitioners provided no evidence that Favaloro knew about the change forms before April 28, 2006, the date on

which the decedent directed his broker not to implement the change forms and, therefore, failed to establish that she had a "motive" to exercise undue influence and procure their rescission (cf. *Matter of Fiumara*, 47 NY2d at 846; *Matter of Herman*, 289 AD2d at 240). In addition, the change forms drastically altered the decedent's longstanding testamentary plan to leave the bulk of his estate to Favaloro. The petitioners also established that they freely stayed at the decedent's home after he was diagnosed with cancer in 2005, and the petitioner Susan Powers testified that there was no issue about her being alone with the decedent during the period from April 21, 2006, to April 29, 2006, which included the date on which the decedent telephoned his broker to rescind the change forms. The petitioners also proffered no evidence that Favaloro actually exercised undue influence in connection with the rescission of the change forms (see *Matter of Fiumara*, 47 NY2d at 846; *Matter of Walther*, 6 NY2d at 54; *Matter of Herman*, 289 AD2d at 240), aside from Powers's testimony that Favaloro was not giving the decedent his pain medication. However, this was countered by the testimony of the decedent's personal physician, who testified that, on unannounced visits to the decedent's home during the last two months of his life, he found that the decedent was "very comfortable and everything seemed to be appropriate and well run."

Furthermore, the evidence on the petitioners' direct case supported an inference that the decedent independently decided to rescind the change forms. As previously noted, according to the broker's testimony, the decedent asserted that he was not aware of what he was signing when he executed the change forms. The broker also testified that he had daily conversations with the decedent, and at no time did the latter state that Favaloro wanted to run the decedent's affairs. He further stated that Favaloro neither called him to discuss the accounts nor ever advised him to make any changes to the accounts. Since "[a]n inference of undue influence cannot be reasonably drawn from circumstances" where, as here, those circumstances "are not inconsistent with a contrary inference" (*Matter of Walther*, 6 NY2d at 54 [internal quotation marks omitted]; see *Matter of Swain*, 125 AD2d at 575), there was no rational basis for the jury's conclusion that the decedent rescinded the change forms based on Favaloro's exercise of undue influence.

In light of our determination, Favaloro's remaining contentions have been rendered academic. Balkin, J.P., Eng, Hall and Sgroi, JJ., concur.