█ In the Matter of the Estate of ROSE McCLOSKEY, Deceased. PETER CAFALLO et al., Appellants; VERONICA FEDERICI et al., Respondents. [763 NYS2d 187] —Appeal from an order of Surrogate's Court, Oswego County (Elliott, S.), entered July 31, 2002, which denied the petition seeking to probate decedent's will.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously reversed on the law and facts

without costs and the petition is granted. All findings of fact contained in the decision of the Surrogate that are inconsistent with the memorandum herein are hereby reversed and new findings are made pursuant to CPLR 5712 (c) as contained in the following memorandum: Surrogate's Court erred in denying the petition seeking to probate decedent's will dated September 30, 1994. The court's finding following a bench trial that the proponents failed to establish by a preponderance of the evidence that decedent possessed sufficient testamentary capacity on that date is against the weight of the evidence (*see Matter of Buckten,* 178 AD2d 981, 982-983 [1991], *lv denied* 80 NY2d 752 [1992]). "It is the indisputable rule in a will contest that '[t]he proponent has the burden of proving that the testator possessed testamentary capacity and the court must look to the following factors: (1) whether she understood the nature and consequences of executing a will; (2) whether she knew the nature and extent of the property she was disposing of; and (3) whether she knew those who would be considered the natural objects of her bounty and her relations with them' " (*Matter of Kumstar,* 66 NY2d 691, 692 [1985], *rearg denied* 67 NY2d 647 [1986]). According to the testimony of the attorney who prepared the will, decedent consulted him because she was "very upset" that a family member had commenced a guardianship proceeding pursuant to Mental Hygiene Law article 81. The attorney testified that decedent was "well versed" with respect to the nature and extent of her assets, and that she instructed the attorney with respect to the distribution of her estate. The attorney further testified that he reviewed the contents of the will with decedent before the will was executed and that she read and understood the will.

The objectants presented the testimony of physicians who treated decedent several months after decedent executed the will and who testified that decedent suffered from various psychological disorders including depression, affective disorder and dementia. None of those witnesses testified, however, that decedent lacked testamentary capacity when the will was executed. The objectants also presented the testimony of a psychiatrist who first treated decedent on September 2, 1994, when she was taken to the hospital against her will for a mental health evaluation based upon concerns of family members that she was suicidal. That physician testified that decedent was very angry that she had been transported to the hospital by police in handcuffs, but that her anger thereafter subsided and she spoke with the physician. The physician testified that decedent was alert and oriented, that she mentioned that her husband left her "a lot of money," and that he

determined that decedent knew who her relatives were. The physician diagnosed decedent with benign senescent, or age-appropriate forgetfulness, which could progress to dementia.

In addition, the objectants presented the testimony of the court evaluator appointed in the Mental Hygiene Law article 81 proceeding. She testified that she interviewed decedent three days before decedent executed the will and that, in her opinion, decedent lacked testamentary capacity. The court evaluator admitted, however, that she did not know the criteria for determining testamentary capacity. She further admitted that decedent knew the amount of her income and assets, that she knew who her relatives were, and that she knew what a will was. The objectants also presented the testimony of several witnesses with respect to the changes in decedent's personality and behavior from early 1994. Based on the foregoing evidence, the court described decedent's behavior as changing from "querulous and cantankerous to * * * bizarre behavior[] verging on severe mental illness" at the time of the execution of the will.

We find that the evidence presented at trial by the objectants does not establish that decedent was "suffering from an insane delusion which directly affected her decision not to leave anything to [the objectants]" (*Matter of Zielinski,* 208 AD2d 275, 277 [1995], *lv dismissed* 86 NY2d 861 [1995], *rearg granted and lv dismissed* 87 NY2d 944 [1996]), nor does it refute the evidence presented by the proponents that decedent possessed testamentary capacity at the time that she executed the will. Furthermore, in light of its finding that decedent lacked testamentary capacity, the court did not reach the issue of undue influence. Upon our review of the record, however, and in the interest of judicial economy, we find that the objectants also failed to establish the existence of undue influence (*see Matter of Buckten,* 178 AD2d at 983). We therefore reverse the order and grant the petition seeking probate of the will. Present—Wisner, J.P., Scudder, Kehoe and Gorski, JJ.