# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

136
CA 12-00963
PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, WHALEN, AND MARTOCHE, JJ.

---

IN THE MATTER OF THE ESTATE OF JOHN G.
ALIBRANDI, DECEASED.
------------------------------------------------
MARY BETH ALIBRANDI, PETITIONER-RESPONDENT;

SUSETTE WISE, OBJECTANT-APPELLANT.

MEMORANDUM AND ORDER

---

MATTHEW D. HUNTER, FOREST HILLS, FOR OBJECTANT-APPELLANT.

THURSTON LAW OFFICE, P.C., AUBURN (EARLE E. THURSTON OF COUNSEL), FOR
PETITIONER-RESPONDENT.

---

Appeal from a decree of the Surrogate's Court, Cayuga County
(Mark H. Fandrich, S.), entered January 19, 2012. The decree, among
other things, admitted decedent's will to probate.

It is hereby ORDERED that the decree so appealed from is
unanimously affirmed without costs.

Memorandum: Preliminary letters testamentary were issued to
petitioner, the daughter of decedent, upon her petition seeking to
probate decedent's will. Objectant, decedent's granddaughter, filed
objections to the probate of the will, alleging, inter alia, that
decedent lacked testamentary capacity and that the will was procured
by undue influence on the part of petitioner. Surrogate's Court
granted petitioner's motion for summary judgment seeking dismissal of
the objections and, inter alia, admitted decedent's will to probate.
We affirm.

"It is the indisputable rule in a will contest that '[t]he
proponent has the burden of proving that the testator possessed
testamentary capacity and the [Surrogate] must look to the following
factors: (1) whether []he understood the nature and consequences of
executing a will; (2) whether []he knew the nature and extent of the
property []he was disposing of; and (3) whether []he knew those who
would be considered the natural objects of h[is] bounty and h[is]
relations with them' " (*Matter of Kumstar*, 66 NY2d 691, 692, *rearg
denied* 67 NY2d 647; *see Matter of Castiglione*, 40 AD3d 1227, 1228, *lv
denied* 9 NY3d 806; *Matter of McCloskey*, 307 AD2d 737, 738, *lv denied*
100 NY2d 516). " 'Mere proof that the decedent suffered from old age,
physical infirmity and . . . dementia when the will was executed is
not necessarily inconsistent with testamentary capacity and does not
alone preclude a finding thereof, as the appropriate inquiry is
whether the decedent was lucid and rational at the time the will was

made' " (*Matter of Williams*, 13 AD3d 954, 957, *lv denied* 5 NY3d 705; *see Matter of Makitra*, 101 AD3d 1579, 1580; *Matter of Murray*, 49 AD3d 1003, 1004). "Where there is direct evidence that the decedent possessed the understanding to make a testamentary disposition, even 'medical opinion evidence assumes a relatively minor importance' " (*Makitra*, 101 AD3d at 1580).

Here, we conclude that, contrary to the contention of objectant, petitioner met her initial burden of establishing decedent's testamentary capacity through the submission of, inter alia, the self-executing affidavits and the SCPA 1404 hearing testimony of the two witnesses to the will's execution, decedent's longtime attorney and a paralegal with the attorney's law firm; the report from a contemporaneous neurological examination of decedent; and the results of decedent's September 2006 Mini-Mental State Examination (MMSE) (*see Murray*, 49 AD3d at 1004-1005; *Castiglione*, 40 AD3d at 1228; *Williams*, 13 AD3d at 956; *see generally Matter of Frank*, 249 AD2d 893, 894, *lv denied* 92 NY2d 807). The evidence offered by petitioner established that decedent's will was the culmination of several months of discussions among decedent, his financial advisors, and his longtime attorney. The attorney stated in an affidavit that, throughout those discussions, decedent "appeared to be of sound mind [and] memory, fully aware of the value of his estate and the natural objects of his bounty, focused on and in complete understanding of what he was doing and that it was his intent to do so[, and] . . . in all respects fully competent to make a will." According to the attorney, decedent showed no signs of lack of cognitive ability or memory loss during that time period. The paralegal, who also had known decedent for a number of years, similarly stated in an affidavit that it appeared that decedent was of sound mind and competent when he executed the will, and that decedent understood what he was signing (*see Williams*, 13 AD3d at 956; *see also Kumstar*, 66 NY2d at 692; *Castiglione*, 40 AD3d at 1228).

Decedent lived independently and made his own legal and financial decisions from the time that the will was executed in November 2006 until March 2008, when he moved in with petitioner because of his declining eyesight. The patient history from decedent's November 2006 neurological examination, which took place just weeks before the will was executed, states that decedent took care of his own hygiene and, with assistance due to his vision loss, his finances. In the will, decedent divided his estate equally among his four then-living children. According to the attorney, decedent did not include objectant, a child of decedent's predeceased daughter, in the will because he "had already made gifts to her." Indeed, objectant confirmed that she had "borrowed" money from decedent in the past. Further, objectant testified that there was a breakdown in her relationship with decedent approximately one year before he executed the will. Thus, the record reflects that decedent " 'knew those who would be considered the natural objects of h[is] bounty and h[is] relations with them' " (*Kumstar*, 66 NY2d at 692; *see Castiglione*, 40 AD3d at 1228).

In opposition to the motion, objectant relied primarily upon

decedent's Alzheimer's diagnosis, the November 2006 neurological examination, and his MMSE results, none of which raises an issue of fact as to testamentary capacity (*see Murray*, 49 AD3d at 1005; *Castiglione*, 40 AD3d at 1228; *Williams*, 13 AD3d at 956-957).  As noted above, a mere diagnosis of Alzheimer's, dementia, or age-related memory deficits is not necessarily inconsistent with testamentary capacity because the relevant inquiry is whether the decedent was competent at the time the will was executed (*see Makitra*, 101 AD3d at 1580; *Murray*, 49 AD3d at 1005; *Williams*, 13 AD3d at 957).  Although the report from the neurological exam indicates that the 89-year-old decedent had been diagnosed with Alzheimer's and that his short-term memory had reportedly declined over the last several years, the report also states that decedent communicated normally, was alert and oriented, spoke articulately and fluently, clearly conveyed ideas, exhibited good eye contact, and interacted appropriately (*see Murray*, 49 AD3d at 1005; *Williams*, 13 AD3d at 956-957).  There is nothing in the report to indicate that decedent was not rational, lucid, or competent.  As for the MMSE, decedent scored two points above the cutoff for "mild" cognitive impairment.  Thus, "having failed to provide evidentiary support for [objectant's] allegation that decedent was incompetent in [November 2006], Surrogate's Court properly granted summary judgment [on that issue] in petitioner's favor" (*Murray*, 49 AD3d at 1005; *see Castiglione*, 40 AD3d at 1228).

We likewise conclude that the Surrogate properly granted that part of petitioner's motion for summary judgment dismissing the undue influence objection.  "A will contestant seeking to prove undue influence must show the exercise of a moral coercion, which restrained independent action and destroyed free agency, or which, by importunity which could not be resisted, constrained the [decedent] to do that which was against [his] free will" (*Makitra*, 101 AD3d at 1581, quoting *Kumstar*, 66 NY2d at 693 [internal quotation marks omitted]).  "Undue influence must be proved by evidence of a substantial nature . . . , e.g., by evidence identifying the motive, opportunity and acts allegedly constituting the influence, as well as when and where such acts occurred" (*Makitra*, 101 AD3d at 1581 [internal quotation marks omitted]).  "Mere speculation and conclusory allegations, without specificity as to precisely where and when the influence was actually exerted, are insufficient to raise an issue of fact" (*Matter of Walker*, 80 AD3d 865, 867, *lv denied* 16 NY3d 711; *see Matter of Capuano*, 93 AD3d 666, 668; *see generally Matter of Greenwald*, 47 AD3d 1036, 1037-1038).  Here, even assuming, arguendo, that objectant identified a motive and opportunity for petitioner to exert influence upon decedent, we conclude that "there is no direct evidence that petitioner did anything to actually influence decedent's distribution of [his] assets" (*Walker*, 80 AD3d at 868).  The attorney testified that he never discussed decedent's will or estate matters with any family members during decedent's lifetime.  Petitioner averred that she "had absolutely nothing to do with [decedent]'s legal and financial matters in particular as they pertain to his preparation, direction, and the execution of his [will]," and that she did not discuss the will with decedent or the attorney prior to its execution. Petitioner was not present when decedent executed the will, and both

the attorney and the paralegal stated in their respective affidavits that he did not appear to be under any restraint or duress at the time.  Finally, objectant last saw or spoke to decedent more than a year before he executed the will, and she admitted at her deposition that she had no evidence of undue influence, "just a feeling."

Entered:  March 15, 2013                          Frances E. Cafarell
                                                  Clerk of the Court