■ ELLIOT M. LEWIS et al., Appellants-Respondents, v VIOLET DIMAGGIO, Also Known as ANN VIOLET DIMAGGIO, Individually and as Executor of the Estate of NANCY M. CHRISTOFARO, Deceased, Respondent-Appellant, and MARGARET MURPHY PETERSON, as Executor of the Estate of MARY IOCOVOZZI, Deceased, Respondent. [58 NYS3d 192]—

 

Rose, J. Cross appeal from an order of the Supreme Court (O'Shea, J.), entered May 12, 2015 in Chemung County, which, among other things, granted motions by defendant Violet DiMaggio and Mary Iocovozzi for summary judgment dismissing the amended complaint.

Nancy M. Christofaro (hereinafter decedent) executed a will in 1992 directing that, as relevant here, the majority of her estate was to be distributed equally between her two adopted adult children, Mary Lewis and Joseph O. Christofaro (hereinafter Christofaro).[1] The 1992 will was drafted by Lewis' husband, an attorney, and listed her as the executor of decedent's estate. Two years prior to her death, however, after decedent's relationship with Lewis had become strained, decedent contacted her niece, Mary Iocovozzi,[2] who was also an attorney, to assist her in drafting a new will and revising her estate plan. As part of her new estate plan, decedent executed a second will in August 2007 and a third will in October 2007. Both of these wills, which, among other things, explicitly disinherited Lewis, made bequests to decedent's sisters, defendant Violet DiMaggio and Rose Seppi, designated DiMaggio

---

1. Christofaro, who was originally a plaintiff in this action, died during the pendency of this appeal and his legal representative, his wife, has been substituted in his place. All references to "plaintiffs" will also include Christofaro.

2. Iocovozzi, who was originally a defendant in this action, also died during the pendency of this appeal, and the executor of her estate has been substituted in her place. All references to "defendants" will also include Iocovozzi.

as the executor of her estate and provided that her residuary estate was to be split equally between plaintiffs, who are the now-deceased Christofaro and five of her six grandchildren. Decedent also established a testamentary trust for the benefit of her sixth grandchild, who was not named in the will, but to whom she felt a strong attachment, and she funded that trust with the entire proceeds of an annuity that had originally designated Lewis and Christofaro as the beneficiaries.

When decedent died in 2009, Lewis filed a petition to admit the 1992 will to probate. After letters testamentary were issued to Lewis, DiMaggio filed a petition to, among other things, admit decedent's October 2007 will to probate. Ultimately, Surrogate's Court (Buckley, S.) revoked the letters testamentary issued to Lewis and granted DiMaggio's petition, finding that, at the time the October 2007 will was executed, decedent was "in all respects competent to make a will and not under restraint." Plaintiffs then commenced this action in 2012 alleging that, prior to her death, decedent was "vulnerable to overreaching" and that defendants had seized upon this vulnerability and wrongfully diverted assets that would have been a part of decedent's estate by the use of fraud and undue influence. Plaintiffs also alleged a separate claim against DiMaggio for breach of her fiduciary duty as executor for failing to take action to recover such assets.

Prior to joinder of issue, defendants each moved to dismiss the amended complaint. Supreme Court denied defendants' motions and, on appeal, this Court affirmed (115 AD3d 1042, 1044-1045 [2014]). After defendants answered and extensive discovery was had, they each moved for summary judgment. DiMaggio, in her motion, also sought costs and sanctions against plaintiffs. Plaintiffs then cross-moved for partial summary judgment, requesting that Supreme Court deem as admitted the facts set forth in their notice to admit. DiMaggio thereafter moved to, among other things, hold plaintiffs in contempt for failing to file a note of issue and compel plaintiffs to produce certain audio recordings they had made of decedent. Ultimately, Supreme Court granted defendants' motions for summary judgment, denied plaintiffs' cross motion and that part of DiMaggio's motion that sought costs and sanctions, and dismissed the amended complaint. Additionally, the court determined that DiMaggio's other motions were moot. Plaintiffs now appeal and DiMaggio cross-appeals.

Initially, we find that Supreme Court properly denied plaintiffs' cross motion for partial summary judgment seeking to deem as admitted the facts set forth in their notice to admit.

The notice to admit improperly sought admission of obviously disputed matters that go to the heart of the controversy (*see* CPLR 3123 [a]; *Nationstar Mtge., LLC v Davidson*, 116 AD3d 1294, 1296 [2014], *lv denied* 24 NY3d 905 [2014]; *Eddyville Corp. v Relyea*, 35 AD3d 1063, 1066 [2006]).

Turning to defendants' motions for summary judgment, plaintiffs do not take issue with Supreme Court's determination that defendants met their initial summary judgment burdens. Rather, plaintiffs contend that, in opposition to defendants' motions, they raised triable issues of fact regarding undue influence and fraud, as well as their standing to maintain this action, by tendering, among other proof, an affidavit and deposition testimony of Lewis describing decedent's alleged confusion during the two years prior to her death, decedent's changes to her estate plan during that period and alleged conversations with decedent regarding the latter's intentions concerning certain assets. Plaintiffs also offered an affidavit by a forensic document examiner who opined that certain of decedent's signatures were not authentic.

In his affidavit, the forensic document examiner averred that he had conducted an examination of three documents purportedly signed by decedent—specifically, a savings account agreement that transferred funds previously held jointly by decedent and Lewis into decedent's individual account, a joint savings account agreement that transformed the individual account back into a joint account and added DiMaggio as a joint holder with the right of survivorship, and a funeral home contract. The examiner also reviewed documents that were known to contain the authentic signatures of decedent and DiMaggio. Based upon his review, the examiner opined that the signatures on the three documents at issue were not written by decedent and, more specifically, that the signatures on the joint and individual savings account agreements were actually written by DiMaggio. Although Supreme Court disregarded the examiner's affidavit, we note that, where an expert affidavit is offered to show that a signature was forged, "the expert opinion must be in admissible form and state with reasonable professional certainty that the signature at issue is not authentic" (*Banco Popular N. Am. v Victory Taxi Mgt.*, 1 NY3d 381, 384 [2004]). In our view, the examiner's affidavit meets this minimal standard.

In light of the examiner's affidavit, we initially find that plaintiffs raised triable issues of fact as to whether extraordinary circumstances exist to permit them to maintain this action (*see Matter of Van Patten*, 190 AD2d 322, 326 [1993]; *In-*

man v Inman, 97 AD2d 864, 865 [1983]; *compare Castor v Pulaski*, 117 AD3d 1552, 1554 [2014]). We also find that the examiner's affidavit raised triable issues of fraud as to DiMaggio (*see generally Matter of Colverd*, 52 AD3d 971, 973-974 [2008]), as well as breach of her fiduciary duty (*see generally Matter of Carbone*, 101 AD3d 866, 868 [2012]), notwithstanding the competing affidavits submitted by bank employees averring that they personally witnessed decedent sign her own name on the bank documents. As to Iocovozzi, however, neither the examiner's affidavit nor the other evidence in the record, including Lewis' affidavit, adequately raises any issue of fraud committed by Iocovozzi (*see Matter of Klingman*, 60 AD3d 949, 950 [2009], *lv denied* 12 NY3d 715 [2009]). Accordingly, Supreme Court properly granted Iocovozzi's motion for summary judgment dismissing the fraud claim against her.

Turning to the claim of undue influence, plaintiffs were required to prove that decedent "was actually constrained to act against [her] own free will and desire by identifying the motive, opportunity and acts allegedly constituting the influence, as well as when and where such acts occurred" (*Matter of Colverd*, 52 AD3d at 973 [internal quotation marks and citation omitted]; *accord Matter of Vosilla*, 121 AD3d 1489, 1493 [2014]; *Matter of Stafford*, 111 AD3d 1216, 1217 [2013], *lv denied* 23 NY3d 904 [2014]). "Significantly, a mere showing of opportunity and even of a motive to exercise undue influence does not constitute prima facie evidence of undue influence unless there is in addition evidence that such influence was actually utilized" (*Matter of D'Agostino*, 284 AD2d 857, 861 [2001] [internal quotation marks, brackets and citations omitted]). "While undue influence can rarely be shown by direct proof, there must be affirmative evidence of facts and circumstances from which the exercise of such undue influence can fairly and necessarily be inferred" (*Matter of Malone*, 46 AD3d 975, 977 [2007] [internal quotation marks and citation omitted]; *see Matter of Bundy*, 217 App Div 607, 612 [1926]). Furthermore, if the circumstantial evidence offered would support conflicting inferences, a conclusion of undue influence cannot be made (*see Matter of Fiumara*, 47 NY2d 845, 846 [1979]; *Matter of Walther*, 6 NY2d 49, 54 [1959]).

Here, plaintiffs rely heavily upon Lewis' affidavit in asserting that defendants unduly influenced decedent. In our view, however, Lewis' allegations are speculative and conclusory, and her affidavit does not allege sufficient facts which, even if credited, could prove that any undue influence was actually exercised over decedent (*see Matter of Stafford*, 111 AD3d at

1219). Although Lewis opined that decedent was forgetful and exhibited unusual behavior in the years prior to her death at the age of 90, she continued to live independently in her own home and there is no allegation that decedent was susceptible to verbal suggestion or easily manipulated (*compare Matter of Nealon*, 57 AD3d 1325, 1327-1328 [2008]; *Matter of Johnson*, 6 AD3d 859, 861 [2004]). Bare assertions that defendants made misrepresentations to decedent to cause her to establish her testamentary trust and to favor her sisters over her adopted children with whom she had developed a strained relationship "fail to demonstrate that any undue influence was actually asserted" (*Matter of Turner*, 56 AD3d 863, 866 [2008]; *see Matter of Renzi*, 67 AD3d 1078, 1079 [2009], *lv denied* 14 NY3d 708 [2010]; *Matter of Malone*, 46 AD3d at 978). Accordingly, we find that Supreme Court properly dismissed plaintiffs' undue influence claim in its entirety, but erred insofar as it also dismissed plaintiffs' claims for fraud and breach of fiduciary duty as to DiMaggio.

In light of our conclusion that Supreme Court partially erred in granting DiMaggio's motion for summary judgment, DiMaggio's motions to hold plaintiffs in contempt for failing to file a note of issue and to compel the production of audio recordings of decedent are not moot, and we remit these matters to Supreme Court in order to address such motions on the merits. Finally, the parties' remaining arguments, including DiMaggio's request for sanctions and costs pursuant to 22 NYCRR 130-1.1, have been examined and determined to be unavailing.

McCarthy, J.P., Egan Jr. and Clark, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant Violet DiMaggio's motion for summary judgment dismissing the fraud and fiduciary duty causes of action asserted against her; motion denied to said extent and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.