Matter of Haley (2020 NY Slip Op 08136)





Matter of Haley


2020 NY Slip Op 08136


Decided on December 31, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 31, 2020

528937

[*1]In the Matter of the Estate of Maria Haley, Also Known as Maria Denes Haley, Deceased. Maria Russell, as Executor of the Estate of Maria Haley, Also Known as Maria Denes Haley, Deceased, Respondent; Joseph Denes et al., Appellants.

Calendar Date: November 19, 2020

Before: Garry, P.J., Egan Jr., Aarons and Pritzker, JJ.


James M. Bryant, Schoharie, for appellants.
Esslie & Frenia, PC, Cairo (Denise Frenia Esslie of counsel), for respondent.



Garry, P.J.
Appeal from an order of the Surrogate's Court of Greene County (Wilhelm, S.), entered February 25, 2019, which granted petitioner's motion for summary judgment dismissing the objections to decedent's will, and admitted the will to probate.
In December 2015, petitioner contacted Thomas Fori, an attorney, and informed him that her mother, Maria Haley (hereinafter decedent), was hospitalized and seriously ill, and that she wanted to prepare a will. Fori spoke by telephone with decedent to determine her desired terms and drafted the will accordingly. Later that month, he and his associate, Daniel Benoit, witnessed the will's execution at petitioner's home. The will directed decedent's assets to be divided among six of her eight children, including petitioner, who was appointed as executor. At decedent's direction, the will made no provision for respondents, who are decedent's remaining two children.
Following decedent's death in April 2016, petitioner commenced this proceeding seeking to admit the will to probate. Respondents filed objections claiming, as pertinent to this appeal, that the will was procured by petitioner's undue influence. Fori and Benoit testified at a hearing pursuant to SCPA 1404 to test the validity of the will. Petitioner then moved for summary judgment dismissing respondents' objections and admitting the will to probate. Respondents opposed. Surrogate's Court granted the motion, dismissed the objections and admitted the will to probate. Respondents appeal.
"Summary judgment in a contested probate case is proper only where the proponent establishes a prima facie case for probate and the objectant fails to raise a material issue of fact" (Matter of Cameron, 126 AD3d 1167, 1168 [2015] [citation omitted]). Fori testified, and Benoit confirmed, that before commencing the execution ceremony, they discussed various topics with decedent with the intent of revealing whether she was competent to make a will, such as the weather, the president, and her ancestry. They described decedent as in her mid-eighties and "frail," but stated that she appeared to be alert, "at ease" and "in possession of her faculties." Fori discussed the will's provisions with decedent "paragraph by paragraph." Decedent stated that "she understood [the will] perfectly" and confirmed that she wished the document to serve as her last will and testament, with Fori and Benoit as witnesses. Decedent executed the will in the presence of Fori and Benoit, who signed the will as witnesses and, later that day, completed self-executing affidavits (see EPTL 3-2.1; Matter of Cameron, 126 AD3d at 1168). This evidence "was more than sufficient to discharge petitioner's initial burden on the motion for summary judgment" and to shift the burden to respondents to establish a triable issue of fact on their undue influence claim (Matter of Stafford, 111 AD3d 1216, 1219 [2013], lv denied 23 NY3d 904 [2014]; see Matter of Cameron, 126 AD3d at 1168-1169; Matter of Prevratil[*2], 121 AD3d 137, 140-141 [2014]).
"To establish undue influence, respondents were required to demonstrate that decedent was actually constrained to act against her own free will and desire by identifying the motive, opportunity and acts allegedly constituting the influence, as well as when and where such acts occurred" (Matter of Murray, 49 AD3d 1003, 1005-1006 [2008] [citations omitted]; see Lewis v DiMaggio, 151 AD3d 1296, 1299 [2017]; Matter of Stafford, 111 AD3d at 1217). "While undue influence can rarely be shown by direct proof, there must be affirmative evidence of facts and circumstances from which the exercise of such undue influence can fairly and necessarily be inferred" (Lewis v DiMaggio, 151 AD3d at 1299 [internal quotation marks and citations omitted]). "[M]ere speculation and conclusory allegations, without specificity as to precisely where and when the influence was actually exerted, are insufficient to raise an issue of fact" (Matter of Stafford, 111 AD3d at 1217 [internal quotation marks, brackets and citations omitted]).
Respondents contend that decedent was elderly and frail, had recently been discharged from the hospital and was still so unwell when she executed the will that she was staying with petitioner and sleeping in a hospital bed in the living room. Respondent Joseph Denes averred by affidavit that petitioner was "very controlling" and "protective" of decedent, that she made it "difficult and uncomfortable" for Denes to visit decedent and that she did not permit decedent to visit privately with Denes until he insisted. He stated that petitioner did not let decedent go anywhere without her, and he claimed that petitioner had a power of attorney for decedent, failed to report expenses and was controlling of decedent's assets. Respondents note that petitioner was decedent's primary caretaker, that petitioner, rather than decedent, contacted Fori about writing the will and that petitioner was present during the execution. They argue that Fori had not previously met decedent and that decedent never had an opportunity to speak with him alone.
However, "a mere showing of opportunity and even of a motive to exercise undue influence does not constitute prima facie evidence of undue influence unless there is in addition evidence that such influence was actually utilized" (Lewis v DiMaggio, 151 AD3d at 1299 [internal quotation marks and citations omitted]). Respondents presented no such evidence. Petitioner averred by affidavit that she was not present when decedent spoke with Fori by telephone about the provisions of her will. Fori recalled that, although decedent was in her hospital bed in the living room when he and Benoit arrived, she was fully dressed, did not seem surprised by their presence and appeared to be aware of the reason for their visit. Although petitioner gave decedent some help in going from the living room to the kitchen area where she executed the will, Fori said that "it didn't appear to be very [*3]much [assistance]." Decedent, Fori and Benoit then sat at the kitchen table for the execution ceremony while petitioner went back to the living room area, 10 or 15 feet away. Because of the home's open layout, petitioner was visible from the kitchen area while the will was executed, but she did not speak or participate in the ceremony. Fori testified that he "watched [decedent] very closely to make sure that she wasn't looking over to [petitioner] for assistance or any kind of direction whatsoever," and that he saw no indications that she might have been under duress. He further stated that decedent telephoned him once after the ceremony, confirmed that she had received a copy of the signed will and stated that it was "fine" and did not need any changes.
"[E]ven assuming that respondents' proof was sufficient to establish that [petitioner] had motive and opportunity to influence decedent's testamentary dispositions, respondents failed to demonstrate that [she] actually exercised undue influence" (Matter of Stafford, 111 AD3d at 1217-1218). In the absence of direct evidence of any such activity, neither the fact that petitioner initially contacted Fori nor her presence when the will was signed gave rise to an issue of fact regarding undue influence (see Matter of Ruhle, 173 AD3d 1389, 1390-1391 [2019]; Matter of Walker, 80 AD3d 865, 868-869 [2011], lv denied 16 NY3d 711 [2011]). As for Denes' claims that petitioner limited his access to decedent, "such circumstantial proof permits conflicting inferences, as a result of which a conclusion of undue influence cannot be made" (Matter of Stafford, 111 AD3d at 1219 [internal quotation marks and citation omitted]). Thus, Surrogate's Court properly granted summary judgment to petitioner and dismissed respondents' objections (see Matter of Ruhle, 173 AD3d at 1391; Matter of Cameron, 126 AD3d at 1169; Matter of Vosilla, 121 AD3d 1489, 1493-1494 [2014]; Matter of Walker, 80 AD3d at 867-868).
Egan Jr., Aarons and Pritzker, JJ., concur.
ORDERED that the order is affirmed, with costs.