Matter of Hattala (2025 NY Slip Op 07354)

Matter of Hattala

2025 NY Slip Op 07354

Decided on December 31, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 31, 2025

CV-24-1595
[*1]In the Matter of the Estate of Melita M. Hattala, Deceased. Tina Kunkel, as Executor of the Estate of Melita M. Hattala, Deceased, Respondent; Dianna Hattala et al., Appellants.

Calendar Date:November 17, 2025

Before:Garry, P.J., Clark, Aarons, McShan and Mackey, JJ.

Coughlin & Gerhart LLP, Binghamton (Zachary D. Morahan of counsel), for appellants.
Levene Gouldin & Thompson, LLP, Vestal (Cynthia Ann K. Manchester of counsel), for respondent.

Garry, P.J.
Appeal from an order of the Surrogate's Court of Broome County (David Guy, S.), entered August 26, 2024, which, in a proceeding pursuant to SCPA article 14, among other things, granted petitioner's motion for summary judgment dismissing the objections to decedent's will.
In 1996, Melita M. Hattala (hereinafter decedent) and her husband executed reciprocal wills that each designated the other spouse as sole beneficiary and executor. Both wills also designated their three daughters — petitioner and respondents Dianna Hattala (hereinafter Hattala) and Melita A. Nagerl (hereinafter Nagerl) — as alternate equal beneficiaries and named petitioner, decedent's eldest daughter, as the alternate executor. According to decedent's statements to law enforcement, among others, respondents began mistreating her following the death of her husband in 2017. The deterioration of decedent's relationships with respondents culminated in two domestic incidents between them within a week of each other in 2021, resulting in a felony charge against Nagerl and an attendant order of protection. Two months after those incidents, decedent executed a new will expressly disinheriting respondents and naming petitioner as sole beneficiary and executor of her estate. Decedent died 10 months later, and petitioner commenced this proceeding to probate the 2021 will. Respondents filed objections, asserting that the will was not properly executed, that decedent lacked testamentary capacity at the time of its execution, and that the will was procured through petitioner's undue influence and fraud. Following an SCPA 1404 hearing, petitioner moved for summary judgment dismissing respondents' objections and admitting the will to probate. Respondents opposed, and Surrogate's Court granted the motion. Respondents appeal.
"Although summary judgment must be exercised cautiously, it is proper in a contested probate proceeding where the proponent submits evidence establishing a prima facie case for probate and the objectant fails to raise any genuine factual issues" (Matter of Minervini, 297 AD2d 423, 424 [3d Dept 2002] [citations omitted]; see Matter of Ostrander, 237 AD3d 1444, 1445 [3d Dept 2025]). The only objection still at issue here is respondents' claim of undue influence, which requires a showing of "motive, opportunity, and the actual exercise of that undue influence" (Matter of Linich, 213 AD3d 1, 5 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Dralle, 192 AD3d 1239, 1242 [3d Dept 2021]). "A party claiming undue influence bears the burden of showing that the influencing party's actions are so pervasive that the will is actually that of the influencer, not that of the decedent" (Matter of Mary, 202 AD3d 1418, 1419 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Walther, 6 NY2d 49, 53-54 [1959]). "Absent specificity as to times, dates and places, conclusory allegations and speculation are insufficient to raise an issue of [*2]fact as to acts of undue influence" (Matter of Timer, 221 AD3d 1103, 1106 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Haley, 189 AD3d 2000, 2002 [3d Dept 2020]). "Although undue influence may be proven through circumstantial evidence, such evidence must be of a substantial nature" (Matter of Prevratil, 121 AD3d 137, 142 [3d Dept 2014] [internal quotations marks and citations omitted]; see Matter of Mary, 202 AD3d at 1420).
We initially find, and respondents do not contest, that petitioner set forth a prima facie case for probate through her submission of decedent's will, containing an executed attestation clause and accompanied by a self-proving affidavit of the subscribing witnesses (see Matter of Ostrander, 237 AD3d at 1445-1446; Matter of Dralle, 192 AD3d at 1240; Matter of Cameron, 126 AD3d 1167, 1168 [3d Dept 2015]).[FN1] Petitioner also produced the testimony of the subscribing witnesses — the drafting attorney and the attorney's legal assistant — elicited during the SCPA examination. The drafting attorney's unrefuted testimony reveals that she met with decedent a number of times over the course of several years. Although decedent had reported estate-related conflict between herself and respondents before, decedent informed the attorney that she desired to change her will in 2021 because respondents had been " 'teaming up' " against her, falsely remarking that she had dementia and that she needed to be " 'put away,' " and, ultimately, due to the domestic incidents at her residence, involving both verbal and physical mistreatment by respondents. In support of her motion, petitioner also proffered audio and video evidence of several instances of mistreatment, as well as body camera footage from the officers that responded to the domestic incidents — the veracity of which is not contested. The burden therefore shifted to respondents to demonstrate a genuine issue of fact as to undue influence.
On this record, there has been no evidentiary showing from which one could reasonably infer that petitioner actually exercised undue influence over decedent with respect to the distribution of her assets. Although, in 2019, petitioner aided decedent in identifying the law firm that ultimately drafted the subject will — after decedent's existing attorney repeatedly failed to return her calls — the drafting attorney provided multiple sworn statements that petitioner was not present during substantive discussions of the will or when decedent executed the will, and neither subscribing witness believed that decedent was under any restraint or influence at the time of its execution (see Matter of Ruhle, 173 AD3d 1389, 1391 [3d Dept 2019]; Matter of Nofal, 35 AD3d 1132, 1135 [3d Dept 2006]; compare Matter of Paigo, 53 AD3d 836, 840 [3d Dept 2008]). The commonplace assistance provided by petitioner during the process of revising decedent's will (scheduling, transportation, general paperwork, etc.) does not create a genuine issue of [*3]fact as to undue influence (see Matter of Prevratil, 121 AD3d at 144; Matter of Greenwald, 47 AD3d 1036, 1037-1038 [3d Dept 2008]).
Respondents' generalized assertions regarding petitioner's control over decedent's medical care are belied by the record, as respondents' own sworn statements make clear that petitioner shared all pertinent medical information with respondents in writing on a daily basis, decedent's medical care being divided among her daughters as it was. Any claims of isolation are similarly contradicted by respondents' submissions, including the fact that Hattala resided with decedent, that Nagerl visited decedent every weekend and that neither could recall any instance where they were denied access to or information concerning decedent (see Matter of Malone, 46 AD3d 975, 978 [3d Dept 2007]). Respondents have instead admitted that it was they who began to avoid interactions with petitioner following their father's death. Contrary to respondents' assertion, the audio and video evidence submitted by both parties make plain that the involvement of law enforcement was not by petitioner's design but was instead the result of respondents' abusive behaviors.[FN2] It is well established that "[a]n inference of undue influence cannot be reasonably drawn from circumstances when they are not inconsistent with a contrary inference" (Matter of Walther, 6 NY2d at 54 [internal quotation marks and citation omitted]). Here, the documented ill-treatment of decedent by respondents provides a more than reasonable explanation for decedent's change to her testamentary plan (see Matter of Timer, 221 AD3d at 1107; compare Matter of Mary, 202 AD3d at 1421-1422; Matter of Johnson, 6 AD3d 859, 861 [3d Dept 2004]). We wholly agree with Surrogate's Court that respondents' attempts to show the actual exercise of undue influence by petitioner consisted of only conclusory and speculative allegations, and respondents' objection was therefore properly dismissed.
To the extent that respondents' challenge to the costs and allowances awarded to petitioner is properly before us, in view of the direct evidence of respondents' mistreatment of decedent, we see no basis upon which to disturb the discretionary finding of Surrogate's Court that this contest was brought in bad faith (see SCPA 2302 [3] [a]). The parties' remaining contentions, including petitioner's request for sanctions, have been considered and determined to be without merit.
Clark, Aarons, McShan and Mackey, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: Respondents did not assert the existence of a confidential relationship between decedent and petitioner, such that the burden would shift to petitioner to show that the execution of the 2021 will was not occasioned by undue influence (see generally Matter of Prevratil, 121 AD3d at 142), nor would such contention find support in the record (see Matter of Giaquinto, 164 AD3d 1527, 1530 [3d Dept 2018], affd 32 NY3d 1180 [2019]; Dwyer v Valachovic, 137 AD3d 1369, 1371 [3d Dept 2016]; see also Matter of Ostrander, 237 AD3d at 1447).

Footnote 2: Indeed, the only evidence of actual efforts to unduly influence decedent's distribution of her assets was on the part of respondents, who were recorded berating, pressuring and manipulating decedent to make them coexecutors of her will and to gift them certain valuable property (see Matter of Antoinette, 238 AD2d 762, 763 [3d Dept 1997]). Decedent's resistance is further evidence that she was not the type to readily succumb to such coercion.