■ In the Matter of the Estate of Rose E. Nofal, Deceased. Henrietta Nofal, as Executor of Rose E. Nofal, Deceased, Appellant; Carol Ann Larow, Respondent. [826 NYS2d 828]—

Mugglin, J. Appeal from an order of the Surrogate's Court of Albany County (Doyle, S.), entered April 14, 2006, which, inter alia, denied petitioner's motion for summary judgment.

In this will contest, petitioner is the younger of decedent's two daughters and respondent is the older daughter. Decedent and her late husband also had a son, Henry Nofal Jr., who predeceased them, survived by two children, neither of whom filed objections to probate. Following extensive discovery, petitioner moved for summary judgment admitting the will to probate. Surrogate's Court, finding issues of fact concerning undue influence, denied summary judgment. Surrogate's Court also reserved judgment on the issue of lack of testamentary capacity pending further discovery.

We reverse. While rare in probate proceedings, "summary judgment is appropriate if the proponent's submission of evidence establishes a prima facie case and the objectant fails to raise any genuine issues of fact" (*Matter of Seelig*, 13 AD3d 776, 777 [2004], *lv denied* 4 NY3d 707 [2005]). On the issue of testamentary capacity, petitioner submitted examination before trial testimony or affidavits from the attorney who prepared the will, the surviving subscribing witness to the will, decedent's doctors, her financial advisers and certain of her relatives, including her sisters. To establish testamentary capacity, the evidence must demonstrate that the testator "understood the consequences of executing the will, knew the nature and extent of the property being disposed of and knew the persons who were the natural objects of his or her bounty and his or her relation-

ship to them" (*Matter of Friedman*, 26 AD3d 723, 724 [2006], *lv denied* 7 NY3d 711 [2006]; *see Matter of Brower*, 4 AD3d 586, 588 [2004]). A presumption of testamentary capacity is created "[w]hen an attorney drafts a will and supervises its execution" (*Matter of Leach*, 3 AD3d 763, 764 [2004], particularly if the evidence submitted includes an affidavit by one of the subscribing witnesses stating that the testator was mentally acute (*see Matter of Friedman, supra* at 725).

Here, the presumption of testamentary capacity was established by the subscribing witness. In addition, the attorney testified that decedent was "clearly of sound mind" and executed the will only after carefully analyzing and discussing its contents. Her November 2002 medical records reveal her to be alert, oriented to her surroundings and not overtly depressed or withdrawn. Her doctors confirmed that she was lucid until the date of her death, even to the extent of coherently conversing with them before signing her own "Do Not Resuscitate" order during her final hospitalization. Her financial advisers established that decedent was aware of her investments and assets and she made financial decisions only after investigating their consequences. The other relatives established that decedent personally paid her bills until she died. As such evidence is sufficient to entitle petitioner to summary judgment on this issue as a matter of law, the burden of raising a triable issue of fact shifted to respondent (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *Svoboda v Our Lady of Lourdes Mem. Hosp., Inc.*, 31 AD3d 877, 878 [2006]).

We view respondent's evidence that decedent was sad and depressed following the deaths of her husband and son, and occasionally easily distracted or confused, to be wholly inadequate to raise an issue of fact as to decedent's testamentary capacity. Moreover, neither additional testimony of this nature from witnesses who only saw decedent on rare occasions nor additional financial disclosure will afford a probable chance of discovering evidence of lack of testamentary capacity. A "mere hope that further discovery will disclose" relevant evidence is insufficient grounds for a continuance (*Ramesar v State of New York*, 224 AD2d 757, 759 [1996], *lv denied* 88 NY2d 811 [1996]; *see Cox v Maloney*, 262 AD2d 832, 833 [1999]).

Next, it is axiomatic that a will may not be admitted to probate if it is the product of undue influence (*see Matter of Panek*, 237 AD2d 82, 83 [1997]). The elements of undue influence are "motive, opportunity, and the actual exercise of that undue influence" (*Matter of Fellows*, 16 AD3d 995, 996 [2005]; *see Matter of Rosen*, 296 AD2d 504, 506 [2002]). Opportunity to

exercise undue influence exists here since petitioner and decedent lived together. Because respondent, as the nonmoving party, is entitled to the benefit of every inference (*see Provost v Hassam*, 256 AD2d 875, 877 [1998]), motive may be established because the two sisters both admit that their personal relationship ranged between poor and nonexistent.

As to the third element—the actual exercise of undue influence—much of the evidence submitted by petitioner on the issue of testamentary capacity is also relevant to this issue. That evidence, when coupled with petitioner's evidence that decedent did not change her testamentary plan until after both her son and husband had died and that it was respondent who, acting unilaterally, had distanced herself from the family, was sufficient to establish a prima facie case of lack of undue influence and, again, the burden of raising a triable issue of fact shifted to respondent (*see Zuckerman v City of New York, supra* at 562). To meet this burden, respondent submitted evidence which, at best, is that decedent employed an attorney who was petitioner's friend to prepare her will and petitioner attempted to isolate her parents from the rest of the family by never leaving any other family member alone with her parents, by not always calling a parent to the telephone for a conversation, and by not accepting invitations to go to dinner or otherwise socialize.

Insofar as the drafting and execution of the will is concerned, the record reveals that decedent's prior attorney was retiring from practice, decedent, following the deaths of her son and husband, wished to change her will, and decedent called petitioner's attorney to make an appointment and drove herself to the appointment to discuss the contents of the will. While decedent did ride with petitioner to the attorney's office on the day that both petitioner and decedent executed new wills, they executed them in separate rooms, outside of the presence of each other. With respect to the balance of respondent's claims, even without assessing the validity of petitioner's explanations and contrary evidence, we conclude that respondent's evidence of the actual exercise of undue influence consists only of " 'speculative allegations' " (*Matter of Fairbairn*, 9 AD3d 579, 581 [2004], *lv denied* 3 NY3d 612 [2004], quoting *Matter of Minervini*, 297 AD2d 423, 424 [2002]), largely circumstantial, and insufficient to support respondent's claims (*see Matter of Arnold*, 78 AD2d 753, 754 [1980], *appeal dismissed* 53 NY2d 703 [1981]; *Matter of Elmore*, 42 AD2d 240, 241 [1973]). Moreover, we perceive that this circumstantial evidence supports conflicting inferences—respondent's claim of isolation contrasted with petitioner's claim of care and protection—such

that a conclusion of undue influence may not be drawn (*see Matter of Branovacki*, 278 AD2d 791, 792 [2000], *lv denied* 96 NY2d 708 [2001]; *Matter of Klitgaard*, 83 AD2d 651, 651 [1981]). We thus conclude that petitioner is entitled to summary judgment on both issues.

Cardona, P.J., Mercure, Crew III and Lahtinen, JJ., concur. Ordered that the order is reversed, on the law, with costs, and motion granted.