■ In the Matter of the Estate of Joseph F. Paigo, Deceased. Theresa A. Cenci, as Proposed Executor of Joseph F. Paigo, Deceased, Appellant; Lisa Paigo et al., Respondents. [863 NYS2d 508]—

Stein, J. Appeal from an order of the Surrogate's Court of Rensselaer County (Hummel, S.), entered November 19, 2007, which denied petitioner's motion for summary judgment dismissing respondents' objections to probate of decedent's will.

In late November 2005, decedent began experiencing symptoms of, among others, left-sided facial drooping and numbness and left hand clumsiness. He was admitted to the hospital on December 15, 2005 and tests revealed multiple tumors in his brain, which were diagnosed as glioblastoma multiforme. On December 23, 2005, decedent underwent a right parietal craniotomy, biopsy and debulking of brain mass, and he remained in the intensive care unit for three days after the surgery.

Following decedent's admission to the hospital, but before undergoing the surgery, petitioner—decedent's sister—allegedly met with him to discuss the execution of a will. On December 19 or 20, 2005, petitioner brought decedent a will that she had prepared, but he refused to sign it because she had not drafted it as he had specified. On December 27, 2005—four days after decedent's surgery and one day after his release from intensive care—petitioner brought decedent a newly drafted will, which decedent signed in the presence of three witnesses.

Decedent died in June 2006 and petitioner sought to probate the will. She and the three witnesses to the will were examined pursuant to SCPA 1404 (4). Thereafter, respondents—decedent's two daughters and only children—filed objections to the will, asserting that decedent lacked testamentary capacity, the will was not duly executed and it was procured through undue influence and fraud. Petitioner then moved for summary judgment

seeking dismissal of the objections and admitting the will to probate. Concluding that issues of fact existed, Surrogate's Court denied the motion. Petitioner now appeals.

Initially, we find that Surrogate's Court erred in failing to dismiss respondents' objection to the manner of execution of the will. The self-executing affidavit accompanying the will and signed by the three witnesses creates a presumption of due execution (*see Matter of Castiglione*, 40 AD3d 1227, 1228 [2007], *lv denied* 9 NY3d 806 [2007]; *Matter of Pilon*, 9 AD3d 771, 772 [2004]; *Matter of Leach*, 3 AD3d 763, 764-765 [2004]; *Matter of Clapper*, 279 AD2d 730, 731 [2001]), and respondents failed to demonstrate that a material triable issue of fact existed regarding the will execution ceremony and compliance with EPTL 3-2.1 (*see Matter of Pilon*, 9 AD3d at 772; *Matter of Leach*, 3 AD3d at 764-765; *Matter of Clapper*, 279 AD2d at 731). Notably in that regard, testimony has already been given by petitioner and all three attesting witnesses which, aside from minor discrepancies, supports the conclusion that the will was duly executed.

Additionally, we conclude that respondents failed to create a triable issue of fact with respect to their claim of fraud. "To establish fraud, it must be shown that . . . petitioner knowingly made a false statement which altered the testamentary disposition that would have been made in the absence of such a statement" (*id.* at 732 [citations omitted]; *see Matter of Colverd*, 52 AD3d 971, 972-973 [2008]). Since respondents failed to present, among other things, any evidence of a knowingly false statement made by petitioner or any other person involved in the drafting or execution of the will, their objection should have been dismissed.

However, we agree with Surrogate's Court that issues of fact exist with respect to the objections involving testamentary capacity and undue influence. Summary judgment is rare in a contested probate proceeding (*see Matter of Castiglione*, 40 AD3d at 1229; *Matter of Leach*, 3 AD3d at 764) and where, as here, "there is conflicting evidence or the possibility of drawing conflicting inferences from undisputed evidence," summary judgment is inappropriate (*Matter of Kumstar*, 66 NY2d 691, 692 [1985]; *Matter of Williams*, 13 AD3d 954, 956-957 [2004], *lv denied* 5 NY3d 705 [2005]).

With regard to testamentary capacity, " 'the appropriate inquiry is whether the decedent was lucid and rational at the time the will was made' " (*Matter of Williams*, 13 AD3d at 957, quoting *Matter of Buchanan*, 245 AD2d 642, 644 [1997], *lv dismissed* 91 NY2d 957 [1998]; *see Matter of Friedman*, 26 AD3d 723, 725

[2006], *lv denied* 7 NY3d 711 [2006]). Once a decedent's testamentary capacity is challenged, the proponent of the will must demonstrate that the decedent "understood (1) the nature and consequences of executing a will, (2) the nature and extent of his [or her] property, and (3) the natural objects of his [or her] bounty and [the] relationship to them" (*Matter of Castiglione*, 40 AD3d at 1228; *see Matter of Kumstar*, 66 NY2d at 692; *Matter of Ruparshek*, 36 AD3d 998, 999 [2007]).

In support of her motion, petitioner presented the will and self-executing affidavit signed by the three witnesses which stated that they knew decedent, that he was "of sound mind, memory and understanding . . . and was in all respects competent to make a Last Will and Testament." This is prima facie evidence of the facts attested to (*see Matter of Clapper*, 279 AD2d at 731). The testimony of petitioner and the three witnesses further support a finding that decedent was competent when he executed the will. However, petitioner offered no evidence that decedent knew the nature and extent of his property and the natural objects of his bounty. Specifically, there is no evidence that decedent was aware of the existence of any assets other than his house—although he also owned a bank account, a retirement account and a life insurance policy—nor is there any mention of one of his daughters in his will.

Even were we to find that petitioner met her initial burden of proof, respondents presented sufficient evidence that calls into question decedent's testamentary capacity. For example, medical records spanning the period from his admission to the hospital on December 15, 2005, until the end of that month—including records contemporaneous with the execution of the will and petitioner's meeting with decedent regarding the substance of the will—are replete with observations that decedent suffered from "intermittent confusion," was "impulsive" and "forgetful," and "d[id] not retain information." These observations are echoed in the testimony and affidavits of multiple individuals—including petitioner—who were frequently around decedent during this period, and we agree with Surrogate's Court that this evidence raises genuine issues of fact regarding decedent's testamentary capacity (*see Matter of Ruparshek*, 36 AD3d at 999-1000).

Turning to respondents' claim of undue influence, the burden was on respondents to show that "decedent was actually constrained to act against his own free will and desire" (*Matter of Castiglione*, 40 AD3d at 1229; *see Matter of Kumstar*, 66 NY2d 693 [1985]; *Matter of Malone*, 46 AD3d 975, 977 [2007]). Because direct proof of undue influence is rare, it may be demonstrated

by circumstantial evidence of motive, opportunity and the actual exercise of such influence (*see Matter of Malone*, 46 AD3d at 977; *Matter of Castiglione*, 40 AD3d at 1228).

Although, as decedent's sister, petitioner was a " 'proper subject[ ] for consideration in the disposition of [his] estate[ ]' " and, consequently, caution should be exercised before attaching illegitimate or unlawful motives to her influence (*Matter of Walther*, 6 NY2d 49, 54 [1959], quoting *Children's Aid Socy. of City of N.Y. v Loveridge*, 70 NY 387, 395 [1877]), we agree with Surrogate's Court that the circumstances here were sufficient to raise a genuine issue of fact as to whether petitioner exerted undue influence over decedent at the time the will was made (*see Matter of Antoinette*, 238 AD2d 762, 763-764 [1997]; *Matter of Elmore*, 42 AD2d 240, 241-242 [1973]). Although not an attorney, petitioner drafted decedent's will herself and is named executor of the estate. Petitioner is a beneficiary of the will— sharing in the residue of decedent's estate along with decedent's parents and two other siblings—and stands to inherit a substantial amount if the will is admitted to probate; however, they would not be distributees if decedent had died intestate (*see* EPTL 4-1.1 [a] [3]). Additionally, petitioner was the only person present when decedent allegedly imparted his desires concerning the disposition of his estate, and she arranged the will execution ceremony and procured the presence of the three witnesses—one of whom was her ex-husband who still resided with her and another of whom was the husband of decedent's other sister. Furthermore, although an attorney was minimally involved in the process,* that attorney was procured by petitioner, was from the law firm of which she is the office manager and decedent received no independent advice concerning the execution of his will and the disposition of his estate (*see Matter of Henderson*, 80 NY2d 388, 394 [1992]). On this record, we note that the presumption which would arise in similar circumstances involving an unrelated fiduciary or beneficiary (*see Matter of Putnam*, 257 NY 140, 143 [1931]; *Matter of Neenan*, 35 AD3d 475, 476 [2006]; *Matter of Collins*, 124 AD2d 48, 54-55 [1987]) is counterbalanced by petitioner's familial relationship with decedent (*see Matter of Walther*, 6 NY2d at 53-54; *see also Matter of Antoinette*, 238 AD2d at 764). We further find that the circumstances attending decedent's execution of his will, including the questions regarding his competency, merit the careful scrutiny that can only be obtained by a full airing of the matter

---

* The attorney allegedly reviewed the will that petitioner had drafted and was at the hospital during the execution, although he had little or no experience in estate matters.

before a trier of fact (*see Matter of Henderson*, 80 NY2d at 394; *Matter of Elmore*, 42 AD2d at 241-242).

Mercure, J.P., Spain, Rose and Kavanagh, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied petitioner's motion for summary judgment dismissing the objections alleging lack of due execution and fraud; motion granted to that extent and said objections dismissed; and, as so modified, affirmed.

