In the Matter of the Estate of SUSIE M. WALKER, Also Known as SUSIE MAE WALKER, Deceased. DELANOR A. PERRY-DAVIS, Formerly Known as DELANOR A. PERRY, as Executor of SUSIE M. WALKER, Deceased, Appellant; TOMMY B. WALKER, Respondent. [914 NYS2d 379]—

Peters, J. Appeal from an order of the Surrogate's Court of Delaware County (Lambert, S.), entered July 7, 2010, which denied petitioner's motion for summary judgment dismissing respondent's objections to decedent's will.

Decedent died in June 2009 survived by her son, respondent, and her great-grandson, Anthony D. Walker. In an August 2007 will, decedent bequeathed her entire estate to her grandson, who is the child of petitioner and respondent. Following her grandson's sudden death, decedent executed a new will, dated October 26, 2007, which named Walker as the sole beneficiary of her estate and specifically disinherited respondent. Petitioner, as executor of decedent's estate, offered the will for probate and respondent filed objections, alleging that the will was not

properly executed, decedent lacked testamentary capacity and the will was the product of undue influence and fraud. Following discovery, petitioner moved for summary judgment dismissing the objections. Surrogate's Court denied the motion and this appeal by petitioner ensued.

Surrogate's Court erred in failing to dismiss respondent's objection to the execution of the will. The execution was supervised by the attorney who drafted the will, and the will was accompanied by a self-executing affidavit signed by the attesting witnesses. With this creating a presumption of due execution (*see Matter of Scaccia*, 66 AD3d 1247, 1250-1251 [2009]; *Matter of Pilon*, 9 AD3d 771, 772 [2004]), respondent's failure to challenge that showing warranted a dismissal of this objection.

Next addressing respondent's challenge to decedent's testamentary capacity, " 'the appropriate inquiry is whether the decedent was lucid and rational at the time the will was made' " (*Matter of Williams*, 13 AD3d 954, 957 [2004], *lv denied* 5 NY3d 705 [2005], quoting *Matter of Buchanan*, 245 AD2d 642, 644 [1997], *lv dismissed* 91 NY2d 957 [1998]; *accord Matter of Paigo*, 53 AD3d 836, 838 [2008]). The burden of proving capacity rests with the proponent of the will, who must demonstrate that decedent "understood the consequences of executing the will, knew the nature and extent of the property being disposed of and knew the persons who were the natural objects of her bounty, and her relationship to them" (*Matter of Ruparshek*, 36 AD3d 998, 999 [2007]; *see Matter of Kumstar*, 66 NY2d 691, 692 [1985]; *Matter of Castiglione*, 40 AD3d 1227, 1228 [2007], *lv denied* 9 NY3d 806 [2007]).

Here, petitioner presented the affidavit of the attesting witnesses stating that decedent was of sound mind and memory and was competent to make a will. This created a presumption of testamentary capacity and prima facie evidence of the facts attested to (*see Matter of Paigo*, 53 AD3d at 839; *Matter of Friedman*, 26 AD3d 723, 724-725 [2006], *lv denied* 7 NY3d 711 [2006]). Petitioner also proffered the affirmation of June Johnston, the drafter of the will, who stated that decedent was alert and rational at the time she executed the will. Johnston further averred that decedent made it abundantly clear that she did not want to leave any of her property to respondent, instead wishing to leave her entire estate to Walker, and unequivocally confirmed that the contents of the instrument reflected her express wishes. In this regard, record evidence confirms that decedent regularly expressed her dissatisfaction with respondent and disappointment in the manner in which he treated her

and, for that reason, did not want him to inherit anything. In addition, petitioner proffered the affidavit of a personal home aide who cared for decedent from June 2008 until the time of her death. She stated that decedent, while physically infirm, was at all times mentally acute, engaged in various daily activities and managed her own financial affairs, including paying the bills and expenses for the property she owned in Brooklyn.

In an attempt to demonstrate a lack of testamentary capacity, respondent points to Johnston's testimony that, on the day decedent executed the will, she did not discuss decedent's assets with her or ascertain the exact amount of the property comprising her estate. Johnston explained, however, both in her testimony and affidavit, that she discussed decedent's assets with her on prior occasions, including during the preparation of a power of attorney approximately six months earlier, at which time she was made aware that decedent's principal asset consisted of an apartment that she owned in Brooklyn and that decedent had limited funds in bank accounts. Contrary to respondent's contention, a decedent need only have a general, rather than a precise, knowledge of the assets in his or her estate (*see Matter of Fish*, 134 AD2d 44, 46 [1987]). Moreover, the fact that decedent handled her own financial affairs during the year preceding her death supports an inference that she apprehended the size of her estate (*see Matter of Bush*, 85 AD2d 887, 888 [1981]; *compare Matter of Slade*, 106 AD2d 914, 915 [1984]). On this record, we find that no genuine question of fact exists as to decedent's competence to execute the will.

Nor did respondent proffer sufficient evidence to raise an issue of fact on the issue of undue influence. "To prove undue influence, a respondent must demonstrate that the decedent 'was actually constrained to act against [his (or her)] own free will and desire by identifying the motive, opportunity and acts allegedly constituting the influence, as well as when and where such acts occurred' " (*Matter of Colverd*, 52 AD3d 971, 973 [2008], quoting *Matter of Murray*, 49 AD3d 1003, 1005-1006 [2008]; *see Matter of Malone*, 46 AD3d 975, 977 [2007]). Mere speculation and conclusory allegations, without specificity as to precisely where and when the influence was actually exerted, are insufficient to raise an issue of fact (*see Matter of Colverd*, 52 AD3d at 973; *Matter of Young*, 289 AD2d 725, 726-727 [2001]).

Here, the crux of respondent's contention is that petitioner, who is respondent's ex-wife and resided with decedent at the time the will was drafted and executed, accompanied decedent to the attorney's office and was present when the will was

signed.* However, there is no direct evidence that petitioner did anything to actually influence decedent's distribution of her assets, and respondent's speculative assertions are insufficient to raise an issue of fact (*see Matter of Ruparshek*, 36 AD3d at 1000; *Matter of Fairbairn*, 9 AD3d 579, 581 [2004], *lv denied* 3 NY3d 612 [2004]). Moreover, where, as here, the circumstantial evidence supports conflicting inferences, a conclusion of undue influence may not be drawn (*see Matter of Turner*, 56 AD3d 863, 866 [2008]; *Matter of Nofal*, 35 AD3d 1132, 1135-1136 [2006]).

Finally, inasmuch as respondent has neither alleged nor presented any evidence of a knowingly false statement made by petitioner, his fraud objection should also have been dismissed (*see Matter of Paigo*, 53 AD3d at 838; *Matter of Colverd*, 52 AD3d at 973-974).

Mercure, J.P., Rose, Malone Jr. and Garry, JJ., concur. Ordered that the order is reversed, on the law, with costs, motion granted and summary judgment awarded to petitioner dismissing respondent's objections and admitting decedent's will to probate.

---

* To the extent that respondent appears to argue that the undue influence was procured by Walker, this issue is not preserved for our review since respondent's verified objections to probate alleged only that the undue influence was wielded by petitioner (*see Matter of Murray*, 49 AD3d at 1006). In any event, respondent has submitted no evidence to support any such claim.