Matter of Dralle (2021 NY Slip Op 01305)





Matter of Dralle


2021 NY Slip Op 01305


Decided on March 4, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 4, 2021

531506

[*1]In the Matter of the Estate of Dorothy Ann Dralle,Deceased. Kenneth M. Fritz, Individually and as Executor of the Estate of Dorothy Ann Dralle, Deceased, Respondent; Michael G. Fritz, Appellant.

Calendar Date: January 7, 2021

Before: Garry, P.J., Egan Jr., Lynch, Clark and Reynolds Fitzgerald, JJ.


Whiteman, Osterman & Hanna, LLP, Albany (William S. Nolan of counsel), for appellant.
Law Offices of Feeney and Centi, Albany (Daniel J. Centi of counsel), for respondent.



Garry, P.J.
Appeal from an order of the Surrogate's Court of Schenectady County (Versaci, S.), entered October 3, 2019, which, among other things, granted petitioner's motion for summary judgment dismissing the objections to decedent's will.
In a 2010 will, Dorothy Ann Dralle (hereinafter decedent) named petitioner (one of her nephews) as executor and respondent (another nephew and petitioner's brother) as successor executor, and made them equal beneficiaries. On January 13, 2012, after decedent began having disagreements with respondent, she executed a new will naming petitioner as executor and sole beneficiary, without any mention of respondent. Decedent died in February 2017 at the age of 93. Petitioner offered decedent's 2012 will for probate. Respondent filed objections challenging the validity of the 2012 will and claiming undue influence and lack of testamentary capacity. Following discovery, petitioner moved for summary judgment dismissing respondent's objections and to admit decedent's 2012 will to probate. Respondent cross-moved for summary judgment to grant one of his objections. Surrogate's Court granted petitioner's motion in its entirety, dismissing respondent's objections and admitting decedent's 2012 will to probate, and denied respondent's cross motion. Respondent appeals.[FN1]
"Whether to dismiss a party's objections and admit the challenged will to probate is a matter committed to the sound discretion of Surrogate's Court and, absent an abuse of that discretion, the court's decision will not be disturbed" (Matter of Vosilla, 121 AD3d 1489, 1490 [2014] [internal quotation marks and citations omitted]). "While rare, summary judgment in a contested probate proceeding is appropriate where a petitioner establishes a prima facie case for probate and the objectant does not raise any factual issues regarding testamentary capacity, execution of the will, undue influence or fraud" (id. [citations omitted]; see Matter of Scaccia, 66 AD3d 1247, 1250 [2009]).
Within this framework, we first address the issue of testamentary capacity. To meet the initial burden, petitioner was required "to demonstrate that decedent understood the consequences of executing the will, knew the nature and extent of the property being disposed of and knew the persons who were the natural objects of [her] bounty and [her] relationship to them" (Matter of Giaquinto, 164 AD3d 1527, 1528 [2018] [internal quotation marks, ellipsis and citations omitted], affd 32 NY3d 1180 [2019]; see Matter of Paigo, 53 AD3d 836, 838-839 [2008]; Matter of Murray, 49 AD3d 1003, 1004 [2008]). Petitioner produced a copy of the 2012 will with self-executing affidavits of the two witnesses to its execution — decedent's attorney and his office manager. The two subscribing witnesses attested to decedent's sound mind, memory and understanding, creating "a presumption of testamentary capacity and prima facie evidence of the facts attested to" (Matter of Walker, 80 AD3d 865, 866 [2011], lv denied [*2]16 NY3d 711 [2011]; see Matter of Giaquinto, 164 AD3d at 1528). Petitioner additionally submitted testimony of the two subscribing witnesses that was elicited during a SCPA 1404 examination. The attorney confirmed that decedent directly informed him that she wanted petitioner "to be the person who would receive her assets" because petitioner had been more attentive. The office manager noted that decedent "was very clear about her intentions, she made appropriate conversation" and she explained why she wanted to change her will to remove respondent.
Petitioner further submitted the affidavit of one of decedent's long-time home care aides, who averred that, during the relevant time, decedent opened her own mail, reviewed and directed the payment of her bills, and indicated in conversations that she was familiar with her nephews. Decedent's tax preparer averred in an affidavit that, "[i]n her discussions with [him] about her assets over the years, including in 2012, [decedent] showed an awareness of what she owned," compiled all her financial documents at tax time and "always made sense no matter what the topic." Thus, petitioner met his burden to show that decedent possessed testamentary capacity.
With the burden shifted, respondent failed to effectively challenge the evidence establishing capacity. Even assuming that respondent could rely on decedent's uncertified medical records (compare Caulkins v Vicinanzo, 71 AD3d 1224, 1226 [2010] and Lentini v Page, 5 AD3d 914, 916 [2004], with Ward v Lincoln Elec. Co., 116 AD3d 558, 559 [2014], Patton v Matusick, Spadafora & Verrastro, 16 AD3d 1072, 1073 [2005], Arbour v Commercial Life Ins. Co., 240 AD2d 1001, 1002 [1997] and Tankersley v Szesnat, 235 AD2d 1010, 1012 n 3 [1997]), evidence of memory loss and "declining cognitive abilities does not, without more, create a question of fact on the issue of testamentary capacity, as the appropriate inquiry is whether the decedent was lucid and rational at the time the will was signed" (Matter of Giaquinto, 164 AD3d at 1529 [internal quotation marks and citations omitted]; see Matter of Walker, 80 AD3d at 866; Matter of Murray, 49 AD3d at 1005). As respondent failed to meet his burden of raising a question of fact regarding capacity, Surrogate's Court correctly dismissed that objection (see Matter of Nofal, 35 AD3d 1132, 1134 [2006]).
Next, as to due execution, "before a will may be admitted to probate, the court must be satisfied that the will has been validly executed" in accordance with the statutory requirements, and that the document expresses the testator's intentions (Matter of Fraccaro, 161 AD3d 1275, 1276 [2018] [internal quotation marks, brackets and citation omitted], lv denied 32 NY3d 911 [2018]; see EPTL 3-2.1; Matter of Walker, 124 AD3d 970, 971-972 [2015]). "When an attorney drafts a will and supervises its execution, a presumption of regularity is raised that the will was properly executed" (Matter of Leach, 3 AD3d 763, 764 [2004] [citations [*3]omitted]; see Matter of Cameron, 126 AD3d 1167, 1168 [2015]). A presumption of due execution similarly arises when a will is accompanied by self-executing affidavits of the attesting witnesses (see Matter of Cameron, 126 AD3d at 1168; Matter of Pilon, 9 AD3d 771, 772 [2004]; Matter of Leach, 3 AD3d at 764-765). The testimony of the attorney and his office manager, as well as their self-executing affidavits, established that they followed the statutory formalities, thus creating a presumption of due execution (see Matter of Scaccia, 66 AD3d at 1250-1251). Specifically, the attorney explained that he followed a will execution ritual wherein he asked decedent if she read the document, if she understood its terms, including to whom she would be leaving her property, if she was aware of the nature and extent of her property and if she intended to make the document her new will.
Respondent's primary argument on this objection is that decedent was "nearly legally blind," such that she could not read the will herself, and there is no proof that anyone read the will to her to be sure that she knew what she was signing (see Matter of Regan, 206 App Div 403, 406 [1923]; Matter of McCready, 82 Misc 2d 531, 531-532 [Sur Ct, Bronx County 1975]). This argument is unavailing. Both subscribing witnesses testified that decedent read the will in their presence. Although it is undisputed that decedent had poor vision, she was never diagnosed as blind (compare Matter of McCready, 82 Misc 2d at 531-532). Decedent's sworn testimony from a 2013 civil action indicated that she had difficulty reading tabs on folders and had to lift each one to read it, so she often relied on others to handle her correspondence. However, we note that in those depositions that occurred more than a year after she signed the will, decedent was directed to review and answer questions about documents, such as financial records and tax returns, and apparently did so without any indication of an inability to read them. Hence, the proof of decedent's poor vision was insufficient to overcome the presumption of due execution or raise questions of fact as to whether she was unable to read the will or understand its terms. Therefore, Surrogate's Court correctly dismissed the objection based on lack of due execution.
Finally, undue influence is established where the "decedent was actually constrained to act against [his or] her own free will and desire," through proof "identifying the motive, opportunity and acts allegedly constituting the influence, as well as when and where such acts occurred" (Matter of Stafford, 111 AD3d 1216, 1217 [2013] [internal quotation marks, brackets and citations omitted], lv denied 23 NY3d 904 [2014]; see Matter of Paigo, 53 AD3d at 839-840). "The influence asserted must rise to the level of a moral coercion and mere speculation and conclusory allegations, without specificity as to precisely where and when the influence was actually exerted, are insufficient to [*4]raise an issue of fact" (Matter of Stafford, 111 AD3d at 1217 [internal quotation marks, brackets and citations omitted]; see Matter of Doody, 79 AD3d 1380, 1381 [2010]; Matter of Scaccia, 66 AD3d at 1252; Matter of Fairbairn, 9 AD3d 579, 581 [2004], lv denied 3 NY3d 612 [2004]). The evidence demonstrated that decedent called her attorney and asked that he draft a new will, the attorney never spoke to petitioner about the will, petitioner was not present when the 2012 will was executed, and he was unaware of its existence until a year after its execution (compare Matter of Neenan, 35 AD3d 475, 476 [2006]). The record also demonstrates that, beginning in 2011, decedent had disagreements with respondent over how he had treated decedent and her sister. Most telling, however, is respondent's own testimony that "[n]othing that [petitioner] did was improper prior to January 13, 2012" and everything that was allegedly inappropriate occurred after that date. Because decedent could not possibly have been influenced to execute the 2012 will based on petitioner's actions that occurred after the execution of that document, and respondent's other allegations of undue influence are based on speculation and surmise, Surrogate's Court correctly dismissed the objection based on undue influence (see Matter of Walker, 80 AD3d at 867-868; Matter of Nofal, 35 AD3d at 1135-1136). Accordingly, on each point, petitioner met the burden of demonstrating a prima facie case and respondent failed to rebut that showing. Surrogate's Court properly granted summary judgment to petitioner and dismissed the objections, and there was no abuse of discretion in admitting the 2012 will to probate.
Egan Jr., Lynch, Clark and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: On appeal, respondent does not challenge Surrogate's Court's denial of his cross motion.