Matter of Linich (2023 NY Slip Op 00250)

Matter of Linich

2023 NY Slip Op 00250

Decided on January 19, 2023

Appellate Division, Third Department

Reynolds Fitzgerald, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 19, 2023

532820

[*1]In the Matter of the Estate of William G. Linich, Also Known as Willam G. Linich and Billy Name, Deceased. Dagon J. James, Individually and as Executor of the Estate of William G. Linich, Also Known as Willam G. Linich and Billy Name, Deceased, Respondent; Susan Linich, Appellant.

Calendar Date:December 15, 2022

Before: Garry, P.J., Lynch, Aarons, Reynolds Fitzgerald and Ceresia, JJ.

Susan Linich, Poughkeepsie, appellant pro se.
Jacobowitz & Gubits, LLP, Walden (Kara J. Cavallo of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from an order of the Surrogate's Court of Ulster County (Sara W. McGinty, S.), entered January 6, 2021, which, among other things, granted petitioner's motion for summary judgment dismissing the objections to decedent's will.
William G. Linich (hereinafter decedent) was a photographer, filmmaker and lighting designer who was known for his work with the artist Andy Warhol. In 2011, decedent executed a will nominating respondent (his niece) as the executor and sole beneficiary of his estate. In 2015, decedent executed a new will naming petitioner (his agent) as the executor and sole beneficiary of his estate. When decedent died in 2016, respondent offered the 2011 will for probate. After letters testamentary were issued to respondent, petitioner sought to admit decedent's 2015 will to probate. Respondent filed objections, alleging that decedent lacked testamentary capacity and that the will was the product of undue influence and fraud. Following discovery, petitioner moved for summary judgment dismissing the objections. Surrogate's Court granted the motion, and this appeal by respondent ensued.
"Whether to dismiss a party's objections and admit the challenged will to probate is a matter committed to the sound discretion of Surrogate's Court and, absent an abuse of that discretion, the court's decision will not be disturbed" (Matter of Dralle, 192 AD3d 1239, 1240 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Shapiro, 100 AD3d 1242, 1243 [3d Dept 2012]). "Summary judgment is rare in a contested probate proceeding" (Matter of Shapiro, 65 AD3d 790, 791 [3d Dept 2009] [internal quotation marks and citations omitted]; see Matter of Castiglione, 40 AD3d 1227, 1229 [3d Dept 2007], lv denied 9 NY3d 806 [2007]; Matter of Leach, 3 AD3d 763, 764 [3d Dept 2004]) and where, as here, "there is conflicting evidence or the possibility of drawing conflicting inferences from undisputed evidence," summary judgment is inappropriate (Matter of Kumstar, 66 NY2d 691, 692 [1985]; see Matter of Paigo, 53 AD3d 836, 839 [3d Dept 2008]; Matter of Williams, 13 AD3d 954, 955 [3d Dept 2004], lv denied 5 NY3d 705 [2005]). Upon reviewing the record before us, we find that respondent has raised issues of material fact and, as such, must set aside Surrogate's Court's award of summary judgment to petitioner as to the objections based on testamentary capacity and undue influence.
First addressing the challenge to decedent's testamentary capacity, the burden rested with petitioner, as the moving party, to demonstrate that decedent "understood the consequences of executing the will, knew the nature and extent of the property being disposed of and knew the persons who were the natural objects of his bounty, and his relationship to them" (Matter of Prevratil, 121 AD3d 137, 140 [3d Dept 2014] [internal quotation marks, brackets and citation omitted]; see Matter of Giaquinto, 164 AD3d 1527, 1528 [3d Dept 2018], affd 32 NY3d 1180 [2019]). Here, petitioner [*2]submitted, among other things, the 2015 will, along with the self-executing affidavits of the attesting witnesses, opining that decedent was of sound mind and memory and competent to make the will, creating "a presumption of testamentary capacity and prima facie evidence of the facts attested to" (Matter of Dralle, 192 AD3d at 1240 [internal quotation marks and citation omitted]; see Matter of Prevratil, 121 AD3d at 140-141). Petitioner also proffered the SCPA 1404 deposition transcripts of the attorney who drafted the will and supervised the will execution, and the subscribing witnesses. The attorney testified that based on her personal observations and interactions with decedent, he clearly, coherently and forcefully dictated the disposition of his assets, informed her who his family members were and advised her that he did not have any assets — specifically mentioning that his negatives were stolen and that the FBI was investigating the theft. The deposition testimony of the attesting witnesses affirmed that the normal policies for the will execution were followed, that decedent was well groomed and did not repeat himself, that there was nothing unusual about his behavior and that decedent was lucid and capable of signing the will. This proof satisfied petitioner's burden of establishing that decedent possessed testamentary capacity (see Matter of Dralle, 192 AD3d at 1240-1241; Matter of Giaquinto, 164 AD3d at 1528-1529; Matter of Prevratil, 121 AD3d at 141).
With the burden shifted to respondent, she contends that decedent did not know the natural objects of his bounty as he was close to his family and did not name them in his will, that decedent did not know the extent of his property since he did not refer to his copyright and that there are issues of fact with regard to decedent's mental state at the time he made his 2015 will. In support of her contentions, respondent submitted the affidavits of her sister, her brother and two friends of decedent, as well as decedent's medical records. These witnesses stated that decedent was very close to his nieces and nephew, especially respondent. Decedent's closest friend affirmed that decedent never advised him that he was going to or that he had changed his will that named respondent as sole beneficiary. Moreover, decedent did not disclose to the attorney drafting the will what his assets were.
Most importantly, the witnesses affirmed that beginning in late 2014, decedent's personal hygiene declined, he acted unusual, was confused and forgetful. The medical records, spanning from the fall of 2014, including a contemporaneous record four days subsequent to the execution of the 2015 will, are replete with observations that decedent refused to care for himself resulting in numerous hospitalizations for hyperglycemia, hypoglycemia and urinary tract infections. The records contain multiple entries that decedent suffered from an altered mental state, confusion and was incoherent. This evidence is sufficient [*3]to raise an issue of fact regarding decedent's testamentary capacity (see Matter of Paigo, 53 AD3d at 839; Matter of Ruparshek, 36 AD3d 998, 999-1000 [3d Dept 2007]; Matter of Brower, 4 AD3d 586, 589 [3d Dept 2004]).
Respondent also proffered sufficient evidence to raise an issue of fact as to undue influence. "To establish undue influence, the burden is on the objectant to show that the influencing party's actions are so pervasive that the will is actually that of the influencer, not that of the decedent" (Matter of Prevratil, 121 AD3d at 141-142 [internal quotation marks and citations omitted]). "The elements of undue influence are motive, opportunity, and the actual exercise of that undue influence" (Matter of Nofal, 35 AD3d 1132, 1134 [3d Dept 2006] [internal quotation marks and citations omitted]; see Matter of Greenwald, 47 AD3d 1036, 1037 [3d Dept 2008]). "Where there is a confidential relationship between parties to a transaction, the burden shifts to the stronger party in such a relationship to prove by clear and convincing evidence that a transaction from which he or she benefitted was not occasioned by undue influence" (Matter of Mary, 202 AD3d 1418, 1420 [3d Dept 2022] [internal quotation marks, ellipsis and citations omitted]).
Here, a confidential relationship existed between decedent and petitioner. Petitioner was decedent's agent for a number of years and decedent was dependent upon petitioner to license and sell his artwork. Petitioner provided payments to decedent, resulting in decedent being financially dependent upon petitioner. Further, decedent placed trust in petitioner as evidenced by his disclosure to petitioner of his bank account information and computer password.
Much of the evidence submitted by respondent on the issue of testamentary capacity is also relevant to the issue of undue influence (see Matter of Nofal, 35 AD3d at 1135). Respondent's witnesses all affirm that while residing at the assisted living facility, decedent was lethargic, frequently complained of being ill, slept a good deal, was unresponsive and was in a weakened state. Decedent's closest friend described him as being easily manipulated, and stated that he was especially vulnerable to petitioner, with whom he was infatuated. In presenting evidence demonstrating decedent's physical decline, coupled with his increasing confusion and personality changes, respondent has raised an issue as to whether decedent was unduly influenced by petitioner (see Matter of Nealon, 57 AD3d 1325, 1328 [3d Dept 2008]; Matter of Paigo, 53 AD3d at 839-840; Matter of Johnson, 6 AD3d 859, 861 [3d Dept 2004]).
"To establish fraud, it must be shown that the proponent knowingly made a false statement that caused decedent to execute a will that disposed of his property in a manner different from the disposition he would have made in the absence of that statement" (Matter of Colverd, 52 AD3d 971, 973-974 [3d Dept 2008] [internal quotation marks and citations omitted]). Inasmuch [*4]as respondent has failed to specify the times, dates and places where fraud occurred, the conclusory and speculative allegations are insufficient to create any viable factual issues as to fraud. Accordingly, Surrogate's Court properly granted summary judgment as to respondent's fraud claim (see Matter of Walker, 80 AD3d 865, 868 [3d Dept 2011], lv denied 16 NY3d 711 [2011]; Matter of Doody, 79 AD3d 1380, 1381 [3d Dept 2010]; Matter of Turner, 56 AD3d 863, 865-866 [3d Dept 2008]).
Garry, P.J., Lynch, Aarons and Ceresia, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted petitioner's motion for summary judgment dismissing the objections based on testamentary capacity and undue influence; motion denied to that extent; and, as so modified, affirmed.