Matter of Timer (2023 NY Slip Op 05565)

Matter of Timer

2023 NY Slip Op 05565

Decided on November 2, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 2, 2023

535646
[*1]In the Matter of the Estate of John R. Timer, Deceased. Melanie J. Renner, as Executor of the Estate of John R. Timer, Deceased, Respondent; Jennifer Timer, Appellant.

Calendar Date:September 12, 2023

Before:Egan Jr., J.P., Lynch, Ceresia and Fisher, JJ.

Robert S. Beehm, Binghamton, for appellant.
Gozigian, Washburn & Clinton, Cooperstown (David J. Clinton of counsel), for respondent.

Lynch, J.
Appeal from an order of the Surrogate's Court of Otsego County (John F. Lambert, S.), entered June 7, 2022, which, among other things, granted petitioner's application, in a proceeding pursuant to SCPA article 14, to admit to probate an instrument purporting to be the last will and testament of decedent.
At the time of his death in August 2020, the last will and testament of John R. Timer (hereinafter decedent), which was executed in April 2016, named petitioner, his fiancÉ, as the executor of his estate and as residuary beneficiary. After petitioner commenced this proceeding to admit decedent's will to probate, respondent — one of decedent's two surviving children — filed objections, alleging that decedent lacked testamentary capacity at the time of the will's execution and that petitioner exercised undue influence over decedent. Respondent emphasized that decedent's original will had divided his assets equally between both of his children, but the existing will made no mention of respondent and expressly disinherited decedent's other child, Crystal Borne, allegedly due to petitioner's false allegation that Borne was not decedent's biological daughter.[FN1] Following a hearing pursuant to SCPA 1404, Surrogate's Court dismissed respondent's objections and ordered that decedent's will be admitted to probate. Respondent appeals.
We affirm. Initially, we are unpersuaded by respondent's contention that Surrogate's Court erred in dismissing her objection to probate based upon lack of testamentary capacity. In that respect, petitioner had the burden of demonstrating "that decedent understood the consequences of executing the will, knew the nature and extent of the property being disposed of and knew the persons who were the natural objects of his bounty, and his relationship to them" (Matter of Prevratil, 121 AD3d 137, 140 [3d Dept 2014] [internal quotation marks, brackets and citation omitted]; accord Matter of Linich, 213 AD3d 1, 4 [3d Dept 2023]; see Matter of Kumstar, 66 NY2d 691, 692 [1985]). "[T]he appropriate inquiry is whether . . . decedent was lucid and rational at the time the will was made" (Matter of Walker, 80 AD3d 865, 866 [3d Dept 2011] [internal quotation marks and citations omitted], lv denied 16 NY3d 711 [2011]; accord Matter of Burrows, 203 AD3d 1699, 1700 [4th Dept 2022], lv denied 39 NY3d 903 [2022]; see Matter of Dralle, 192 AD3d 1239, 1241 [3d Dept 2021]), and "[a] presumption of testamentary capacity is created when an attorney drafts a will and supervises its execution" (Matter of Nofal, 35 AD3d 1132, 1134 [3d Dept 2006] [internal quotation marks, brackets and citation omitted]).
The challenged will contains a clause averring that decedent was of "sound mind and memory" and bequeaths the entirety of his estate to petitioner in the event she survived decedent, naming his nephew as a second beneficiary if she did not. Although the will does not mention respondent, it expressly disinherits Borne, stating that decedent is "not unmindful [*2]of [her but is making] no provision for her as part of [his] estate plan
. . . for reasons best known to her."
During the hearing before Surrogate's Court, decedent's then-attorney — now a County Court judge — testified that he prepared decedent's April 2016 will following a general protocol of first meeting with decedent to determine how he wished to dispose of his estate, sending a proposed will for his review and, once approved, performing a separate execution ceremony in the office attended only by decedent and the two witnesses — i.e., the attorney and his paralegal. The attorney confirmed that, at the time of the will's execution, decedent declared the document to be his last will and testament, signed it in the attorney's presence and requested that the attorney sign as a witness (see EPTL 3-2.1 [a] [2]-[4]). The attorney could not recall whether decedent mentioned respondent, but acknowledged that as a general practice he would have included a reference to respondent in the will had he known about her. In that regard, the attorney, who had previously represented decedent in a divorce proceeding, recalled that there was a real property transfer to decedent's daughter as part of the divorce settlement. The attorney's paralegal testified that decedent answered in the affirmative when asked if he was of sound mind in executing the document and was doing so of his own free will. She testified that decedent also appeared to be of sound mind at that time, explaining that he sufficiently answered all of the standard questions posed to him during the execution ceremony. The attorney met with decedent for a final time in 2020 when he came to the attorney's office with petitioner. The attorney described decedent as "distraught" because he had received "a very bad report" from his doctor, but made no changes to the previously-executed will and instead "just wanted to make sure everything was in order."
In our view, the testimony of both the supervising attorney and the paralegal created a presumption of testamentary capacity (see e.g. Matter of Scaccia, 66 AD3d 1247, 1250-1251 [3d Dept 2009]; Matter of Ruparshek, 36 AD3d 998, 999 [3d Dept 2007]). Although respondent emphasizes that she was not mentioned in the will — arguing that this is evidence that decedent did not know the natural objects of his bounty — the failure to expressly disinherit respondent does not undermine decedent's testamentary capacity, particularly where, as here, decedent named his nephew as a second beneficiary in the event petitioner did not survive decedent and expressly disinherited Borne (see Matter of Van Horn, 68 Misc 3d 1217[A], 2020 NY Slip Op 50977[U], *4 [Sur Ct, Orange County 2020]; Matter of Fiorentino, 65 Misc 3d 1236[A], 2019 NY Slip Op 52012[U], *3 [Sur Ct, Queens County 2019]). This specificity indicates that decedent understood the individuals who were the natural objects of his bounty and made a deliberate choice in how he was distributing his estate.
Respondent's [*3]absence from the will may also be logically explained by the surrounding circumstances. In their hearing testimony, several family members confirmed that, in the time frame shortly before the will's execution, decedent's relationship with respondent had deteriorated. By her own account, respondent acknowledged that their previously good relationship changed for the worse in the spring of 2015 when decedent revealed that he had been having an affair with petitioner during his marriage to respondent's mother. Moreover, the testimony revealed that, in divorce proceedings involving decedent's ex-wife, decedent held a life estate in certain real property that would transfer to respondent upon decedent's death. Although respondent and decedent's ex-wife commenced a lawsuit to divest decedent of his life estate, decedent prevailed in that suit. It is also telling that decedent met with his attorney in 2020 to ensure that his financial affairs were in order after receiving a terminal diagnosis, yet made no alterations to his will at that time. In these circumstances, it is evident that the failure to mention respondent in the will was intentional, and the omission does not call into question decedent's testamentary capacity.
Respondent also argues that petitioner failed to demonstrate that decedent understood the nature and extent of the property being disposed of. Although the proof in this regard was limited, "a decedent need only have a general, rather than a precise, knowledge of the assets in his or her estate" (Matter of Walker, 80 AD3d at 867; accord Matter of Vosilla, 121 AD3d 1489, 1491 [3d Dept 2014]). The subject will provides that, after paying decedent's debts, funeral expenses and applicable taxes, "[a]ll the rest, residue and remainder of [his] estate and property, be it real, personal or mixed, of whatsoever name or nature, and wheresoever situate," would be bequeathed to petitioner. There is no evidence calling into question decedent's understanding of the assets being bequeathed in this regard. The attorney who drafted the will confirmed his general practice was to "meet with the client to find out what they want, and find out what assets [they possessed], [and] how they wanted to leave [them]." Respondent submitted no credible evidence to the contrary (compare Matter of Falkowsky, 197 AD3d 1300, 1307 [2d Dept 2021], lv denied 39 NY3d 915 [2023]; Matter of Paigo, 53 AD3d 836, 839 [3d Dept 2008]).
As for respondent's claim of undue influence, it was respondent's burden, as the objectant, to show that petitioner's actions were "so pervasive that the will [wa]s actually that of [petitioner], not that of . . . decedent" (Matter of Prevratil, 121 AD3d at 142 [internal quotation marks and citations omitted]; accord Matter of Linich, 213 AD3d at 5; see Matter of Mary, 202 AD3d 1418, 1419 [3d Dept 2022]). The influence exercised must rise to the level of "a moral coercion" (Matter of Prevratil, 121 AD3d 142 [internal quotation marks and citation [*4]omitted]) imposed upon one who is too weak, infirm or fearful to resist the underlying manipulation and exploitation (see Matter of Mary, 202 AD3d at 1419-1420). "The elements of undue influence are motive, opportunity, and the actual exercise of that undue influence" (Matter of Linich, 213 AD3d at 5 [internal quotation marks and citations omitted]; see Matter of Turner, 56 AD3d 863, 866 [3d Dept 2008]; Matter of Malone, 46 AD3d 975, 977 [3d Dept 2007]). "Absent specificity as to times, dates and places, conclusory allegations and speculation are insufficient to raise an issue of fact as to acts of undue influence" (Matter of Turner, 56 AD3d at 865-866 [internal quotation marks and citations omitted]; see Matter of Dralle, 192 AD3d at 1243). "Although undue influence may be proven through circumstantial evidence, such evidence must be of a substantial nature" (Matter of Prevratil, 121 AD3d at 142 [internal quotation marks and citations omitted]; accord Matter of Mary, 202 AD3d at 1420; see Matter of Malone, 46 AD3d at 977).
In our view, respondent's claim of undue influence is speculative and unsupported by the record. The dispositive point is that decedent executed his will in 2016 when even respondent confirmed that her relationship with him was severely strained. The testimony of various family members that petitioner subsequently undermined decedent's relationship with his family, particularly in March 2020 prior to his passing, does not raise a genuine question of fact as to undue influence at the time decedent signed the will (see Lewis v DiMaggio, 151 AD3d 1296, 1300 [3d Dept 2017]; Matter of Stafford, 111 AD3d 1216, 1219 [3d Dept 2013], lv denied 23 NY3d 904 [2014]). To the extent we have not expressly addressed any of respondent's additional arguments, they have been considered and found to be lacking in merit.
Egan Jr., J.P., Ceresia and Fisher, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Borne survived decedent but passed away during the pendency of this proceeding.