Matter of Ostrander (2025 NY Slip Op 02382)

Matter of Ostrander

2025 NY Slip Op 02382

Decided on April 24, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 24, 2025

CV-23-2166
[*1]In the Matter of the Estate of Richard H. Ostrander, Deceased. Alison M.O. Stark, as Executor of the Estate of Richard H. Ostrander, Deceased, Respondent; Carolyn M. Postell, Appellant.

Calendar Date:February 19, 2025

Before:Egan Jr., J.P., Aarons, Pritzker, Lynch and Ceresia, JJ.

Tabner, Ryan & Keniry, LLP, Albany (Eric N. Dratler of counsel), for appellant.
Rowlands, LeBrou & Griesmer, PLLC, Latham (Nicholas J. Orecki of counsel), for respondent.

Aarons, J.
Appeal from an order of the Surrogate's Court of Columbia County (Richard Koweek, S.), entered October 17, 2023, which, in a proceeding pursuant to SCPA article 14, among other things, granted petitioner's motion for summary judgment dismissing the objections to decedent's will.
Richard H. Ostrander (hereinafter decedent) owned and operated farm property that had been in his family for many years. The farm property consisted of a single-family house, several barn structures and approximately 210 acres of land (hereinafter Ostrander Farm Property). In 2011, decedent placed the Ostrander Farm Property into a trust, which provided that the trust asset would be distributed equally between decedent's two daughters, petitioner and respondent, upon his death — naming respondent as trustee. Petitioner and her husband, who lived in the single-family home on the farm with their children since the 1990s, assisted decedent in operating the farm, which arrangement was formalized in 2011 through a partnership agreement known as Willow Dell Farm, with decedent, petitioner and petitioner's husband having equal ownership interest.
In 2020, decedent, wishing to keep the Ostrander Farm Property in the family, met with petitioner and respondent at his long-term accountant's office to discuss petitioner's offer to purchase respondent's trust interest in the farm property. Respondent — who lived in a different city and was not involved with the farm operations — asserted that petitioner's offer was well below the value of the land and countered that she would accept the offer if she also received a portion of the property on which to build a house. Thereafter, decedent, petitioner and respondent left the meeting to look at parcels of land on the farm property that would be suitable for respondent.
The next day, decedent called the accountant, explaining that the plot of land respondent requested was unreasonable and that he wanted the Ostrander Farm Property to go to petitioner. The accountant referred decedent to an attorney who advised that distribution of the trust asset could be altered by modifying decedent's will. In May 2020, decedent executed a new will that granted the Ostrander Farm Property to petitioner and named petitioner as executor. Decedent died in May 2021.
Petitioner, as decedent's executor, thereafter commenced this proceeding to admit the 2020 will to probate. Respondent filed objections challenging the validity of the will and claiming, among other things, undue influence. Following discovery, petitioner moved for summary judgment dismissing the objections and to admit decedent's 2020 will to probate. Surrogate's Court, finding respondent's claims to be largely speculative, dismissed respondent's objections, granted petitioner's motion for summary judgment and admitted the 2020 will to probate. Respondent appeals.
We affirm. "Whether to dismiss a party's objections and admit the challenged will to probate is a matter committed to the sound [*2]discretion of Surrogate's Court and, absent an abuse of that discretion, the court's decision will not be disturbed" (Matter of Vosilla, 121 AD3d 1489, 1490 [3d Dept 2014] [internal quotation marks and citations omitted]; accord Matter of Linich, 213 AD3d 1,3 [3d Dept 2023]). Summary judgment, although rare in a contested probate proceeding, is appropriate where a petitioner establishes a prima facie case for probate and the objectant fails to raise any genuine issues of fact regarding testamentary capacity, execution of the will, undue influence or fraud (see Matter of Lowrey, 225 AD3d 964, 965 [3d Dept 2024]; Matter of Dralle, 192 AD3d 1239, 1240 [3d Dept 2021]).
Initially, with respect to the execution of the will, respondent contends that Surrogate's Court erred in applying the presumption of regularity as witness testimony and documentary evidence demonstrate an existence of material questions of fact precluding summary judgment. We disagree. In support of petitioner's motion for summary judgment, petitioner submitted a copy of the 2020 will with attached self-executing affidavits of the attorney who drafted the will and a legal assistant at the law office, both of whom acted as attesting witnesses to the will's execution. A presumption of regularity arises that a will was properly executed where the will was drafted by an attorney or where the will is accompanied by self-executing affidavits of the attesting witnesses (see Matter of Dralle, 192 AD3d at 1242; Matter of Leach, 3 AD3d 763, 764 [3d Dept 2004]). Both situations giving rise to the presumption of validity of a duly executed will are present here. In addition, the drafting attorney and legal assistant confirmed through their SCPA 1404 testimony that the statutory formalities were followed in the execution of the will. Specifically, the attorney explained that he reviewed each paragraph of the document with decedent, asked decedent if he understood it and was intending the document to be his last will and testament and, with both he and the legal assistant present as attesting witnesses, decedent then executed the will. The variety of proof submitted by petitioner satisfied her initial burden in proving a prima facie case for probate based upon the presumption of regularity in the execution of the will (see Matter of Linich, 213 AD3d at 4; Matter of Dralle, 192 AD3d at 1241-1242; Matter of Scaccia, 66 AD3d 1247, 1250-1251 [3d Dept 2009]; Matter of Leach, 3 AD3d at 764-765).
Contrary to respondent's contention, she did not provide positive proof that the formal requirements of execution were not met so as to rebut the presumption. Any discrepancies in the attestation clause and self-executing affidavits as to whether the attorney and/or the legal assistant subscribed their signature in the presence of decedent are insufficient to raise a question of fact so as to overcome the presumption that execution of the will complied with the requisite statutory formalities (see EPTL 3-2.1 [[*3]a], [b]; see e.g. Matter of Cameron, 126 AD3d 1167, 1168 [3d Dept 2015]). The formal requirements of execution of a will require the two attesting witnesses to attest to the testator's signature, as affixed or acknowledged in their presence, within 30 days thereof (see EPTL § 3-2.1 [a] [4]). There is no allegation, nor does the evidence reflect, that the attesting witnesses did not comply with this 30-day provision. As there is no evidence that the formalities in the execution of the will were not complied with, we find no abuse of discretion in Surrogate's Court applying the presumption of regularity and dismissing the objection alleging a lack of due execution (see Matter of Dralle, 192 AD3d at 1242).
Further, we are unpersuaded by respondent's contention that Surrogate's Court erred in granting petitioner's motion for summary judgment because a confidential relationship existed between petitioner and decedent and petitioner exerted undue influence over decedent. Respondent bore the initial burden of establishing that a confidential relationship existed before the burden shifted to petitioner to demonstrate that no undue influence was asserted in the creation of the 2020 will (see Matter of Kotsones, 185 AD3d 1473, 1475 [4th Dept 2020], affd 37 NY3d 1154 [2022]). "In determining whether a confidential relationship exists, the existence of a family relationship does not, per se, create a presumption of undue influence; there must be evidence of other facts or circumstances showing inequality or controlling influence" (Matter of Nealon, 104 AD3d 1088, 1089 [3d Dept 2013] [internal quotation marks and citation omitted], affd 22 NY3d 1045 [2014]; see Matter of Giaquinto, 164 AD3d 1527, 1531 [3d Dept 2018], affd 32 NY3d 1180 [2019]).
Respondent's contention that a confidential relationship existed finds no support in the record as there are no facts to illustrate that petitioner exercised a controlling influence or dealt on unequal terms with decedent (see Matter of Mary, 202 AD3d 1418, 1422 [3d Dept 2022]; Matter of Giaquinto, 164 AD3d at 1531; Dwyer v Valachovic, 137 AD3d 1369, 1371 [3d Dept 2016]; Matter of Graeve, 113 AD3d 983, 984-985 [3d Dept 2014]). Rather, the record establishes that decedent and his wife lived alone in a house a short distance from the farm; that decedent was able to care for himself, capable of driving, managed his own affairs and maintained financial independence; and that, although decedent was not as active with the Willow Dell Farm operations, he managed the partnership's finances. Further, the record establishes, and respondent acknowledged, that decedent, despite his health issues related to his chemotherapy treatments, was of clear mind, exhibited no cognitive decline or disorientation and remained independent.
Even if we were to find that a confidential relationship existed, the record does not support any undue influence exerted by petitioner over decedent (see Matter of Ruhle, 173 AD3d 1389, 1390-1391 [3d Dept [*4]2019]). The record establishes that petitioner had no contact with the attorney regarding the preparation of decedent's 2020 will, was not involved in its drafting nor was she present during its execution. To that end, the attorney testified that he prepared the 2020 will after discussing the matter with decedent and that decedent was "very clear-minded" and "direct" that he wanted the Ostrander Farm Property to go to petitioner as he wished to keep the property in the family.
Respondent nevertheless asserts that petitioner unduly influenced decedent by threatening to look for other farmland and move the Willow Dell Farm operations elsewhere — which, according to respondent, would have forced decedent, against his wishes, to sell the Ostrander Farm Property rather than having it remain in the family. Notably, this argument runs counter to respondent's objections and opposition to the summary judgment motion, wherein she stated that decedent wished for the property to be sold upon his death. Regardless, respondent's proof consists primarily of her own opinion testimony that petitioner was greedy, bad with money and took advantage of decedent's generosity. Respondent did not supply any evidence from which to infer that petitioner's alleged manipulations so overpowered decedent's free will and desire so as to render the 2020 will an expression of petitioner's wishes and not decedent's (see generally Matter of Prevratil, 121 AD3d 137, 141-145 [3d Dept 2014]). As petitioner met the burden of demonstrating a prima facie case for probate, and respondent did not raise any material issues of fact concerning the validity of the will (see Matter of Lowrey, 225 AD3d at 966; Matter of Vosilla, 121 AD3d at 1494; Matter of Dietrich, 271 AD2d 894, 894-895 [3d Dept 2000]), we find no abuse of discretion in Surrogate's Court granting summary judgment to petitioner, dismissing respondent's objections and admitting the 2020 will to probate.
Egan Jr., J.P., Pritzker, Lynch and Ceresia, JJ., concur.
ORDERED that the order is affirmed, with costs.