Matter of Urban (2023 NY Slip Op 06296)

Matter of Urban

2023 NY Slip Op 06296

Decided on December 7, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 7, 2023

CV-22-1977
[*1]In the Matter of the Estate of Anne S. Urban, Deceased. Attorney General, Respondent; Thomas Lagan, Appellant.

Calendar Date:October 18, 2023

Before:Clark, J.P., Aarons, Pritzker, Ceresia and Fisher, JJ.

Markham Read Zerner LLC, Boston, Massachusetts (John J.E. Markham II of counsel), for appellant.
Letitia James, Attorney General, Albany (Kate H. Nepveu of counsel), for respondent.

Fisher, J.
Appeal from an order and decree of the Surrogate's Court of Albany County (Stacy Pettit, S.), entered July 8, 2022, which, among other things, granted petitioner's motion for summary judgment, and vacated a decree admitting to probate an instrument purporting to be the last will and testament of decedent.
Between 2006 and 2012, respondent and Richard Sherwood, former attorneys, provided financial and estate planning services to Anne S. Urban (hereinafter decedent) and her sister. Following the August 2011 death of the sister, who left an estate worth approximately $20 million to various family members, charities, churches and other organizations, respondent and Sherwood devised a scheme to divert significant funds to themselves. Notably, they had decedent sign a renunciation of executor and trustee of her sister's will and the associated trust, instead naming respondent as executor and Sherwood as trustee. In November 2011, respondent and Sherwood drafted and had decedent sign a will (hereinafter the 2011 will) that bequeathed her entire estate into a revocable trust (hereinafter the 2011 AURT), which distributed the entirety of her assets to several family members and charities. On the same day, respondent and Sherwood also drafted and had decedent sign an irrevocable trust (hereinafter the 2011 AUIT), naming Sherwood as trustee and respondent as successor trustee, which allowed them to distribute trust assets to any person or charitable organization — including themselves. Following the execution of the 2011 AUIT, several million dollars were transferred from the sister's estate into the 2011 AUIT controlled by respondent and Sherwood.
Thereafter, approximately four months after executing the 2011 documents, respondent and Sherwood had decedent execute a new will (hereinafter the 2012 will) that distributed the entirety of her assets into a revocable trust (hereinafter the 2012 AURT) that named Sherwood as trustee, created certain bequests to charities and distributed the residuary to respondent. Until decedent's death in February 2013, respondent and Sherwood withdrew funds from the 2011 AUIT for their own purposes. Upon her death, respondent had the 2012 will admitted to probate and, because it bequeathed her entire estate into the 2012 AURT of which he was the sole beneficiary of the residuary, he ultimately collected approximately $3.5 million.
In 2018, following an investigation, respondent and Sherwood each pleaded guilty in state and federal court to defrauding decedent and several charities out of almost $12 million. Petitioner applied to Surrogate's Court seeking, among other things, to vacate the decree admitting the 2012 will to probate, declare the 2012 AURT invalid, declare the 2011 AURT valid and to admit the 2011 will to probate. After respondent joined issue, petitioner moved for summary judgment relying upon, among other things, respondent's plea agreements that admitted to defrauding decedent, her sister and several charities[*2]. Respondent submitted opposition, which Surrogate's Court found to be largely self-serving and conflicting with respondent's prior sworn statements, and therefore the court granted petitioner's motion in its entirety. Respondent appeals.[FN1]
We affirm. In order to vacate a decree admitting a will to probate, "a party must demonstrate a substantial basis for its contest and a reasonable probability of success through competent evidence that would have probably altered the outcome of the original probate proceeding" (Matter of American Comm. for Weizmann Inst. of Science v Dunn, 10 NY3d 82, 96 [2008]; accord Matter of Smith, 160 AD3d 1256, 1258 [3d Dept 2018]). "To establish fraud, it must be shown that the proponent knowingly made a false statement that caused [the] decedent to execute a will that disposed of his [or her] property in a manner different from the disposition he [or she] would have made in the absence of that statement" (Matter of Linich, 213 AD3d 1, 6 [3d Dept 2023] [internal quotation marks and citations omitted]). In meeting its burden, petitioner relies on the documentary evidence and respondent's state and federal plea agreements. Specifically, respondent's federal plea agreement included an admission that he and Sherwood "agreed that they would divert and transfer to themselves millions of dollars belonging to [the sister's] estate and millions of dollars belonging to [decedent]." In doing this, they "concealed from [decedent] their reason for creating the AUIT, and asked her to sign the AUIT documents without advising her as to its implications." Further, respondent admitted that, between November 30, 2011 and October 30, 2015 — which included the time period that he and Sherwood had decedent sign the 2012 will and 2012 AURT — that they "executed several dozen transfers of funds, funneling money through several financial institution accounts that they set up in the name of [decedent] and/or a trust purporting to benefit her, before ultimately sending the funds to their personal accounts" and to a separate business account. One of those accounts referenced was a specific account in respondent's name that had received a check for approximately $3.5 million from the residuary of the 2012 AURT. This figure is included in the total amount of the funds that respondent admitted to transferring out of decedent's "estate and trusts" under count 1, pursuant to which he plead guilty to "knowingly and intentionally conduct[ing] a financial transaction involving funds that [respondent] knew to be the proceeds of some specified unlawful activity, knowing and intending that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity." Furthermore, respondent agreed to pay restitution, which included the proceeds from the check for $3.5 million out of decedent's estate through the 2012 AURT.
The burden shifted to respondent to raise a [*3]question of fact, which he did not. Respondent contends that his federal plea agreement was only referring to his conduct surrounding the 2011 AUIT, but not as it relates to the 2012 will and the 2012 AURT that had made him the sole beneficiary of decedent's residuary. However, in pleading guilty to count 1, he admitted to transferring funds out of decedent's "estate and trusts" (emphasis added) — indicating more than just the 2011 AUIT. Indeed, his conduct occurred during the relevant time period when both the 2012 will and the 2012 AURT were drafted and signed by decedent. Except for a brief four-month period before the 2012 documents were executed that revoked the 2011 documents, the 2011 AUIT and 2012 AURT were the only trusts operating for the period that respondent admitted the facts supporting his fraud. Further, respondent also admitted that the proceeds from the 2012 AURT, which consisted of the approximately $3.5 million check that he issued to himself out of decedent's estate, was part of the factual basis for his guilty plea; this figure constitutes more than half of the total amount that he agreed to pay in restitution. To the extent that his opposition claims a relationship between decedent and himself, whereby she allegedly desired him to have the proceeds that he previously admitted were part of his scheme to "divert and transfer" money from her and her sister, this self-serving affidavit contradicts prior sworn testimony and documentary evidence, so it cannot be used to create a question of fact (see Hill v Country Club Acres, Inc., 134 AD3d 1267, 1268 [3d Dept 2015]; Conolly v Thuillez, 26 AD3d 720, 722 [3d Dept 2006]). Accordingly, Surrogate's Court properly granted petitioner's motion for summary judgment. We have examined the parties' remaining contentions and have found them to be without merit or rendered academic.
Clark, J.P., Aarons, Pritzker and Ceresia, JJ., concur.
ORDERED that the order and decree is affirmed, with costs.

Footnotes

Footnote 1: Respondent narrowly challenges the order and decree from Surrogate's Court as it relates to the award of summary judgment only.